## HERTZ v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 7, 1927.)

No. 7465.

1. Attorney and client ⊜⇒38—Courts may disbar attorney for improper professional conduct.

Inherent power exists in every court to disbar an attorney for improper professional conduct.

2. Courts ⊜⇒363—State statutes are not controlling in federal court in disbarment matters.

State statutes are not controlling in federal court in matter of disbarment cases, court having power to admit attorneys, regardless of state statutes, and likewise to disbar them.

3. Attorney and client ⊜⇒53(1)—Copy of affidavit prepared by attorney to deceive court held sufficiently identified for introduction in disbarment proceedings, although never part of record.

In proceedings for disbarment of attorney for having assisted in preparation of affidavit intended to deceive and defraud court, copy of such affidavit *held* sufficiently identified to allow its introduction in evidence on showing original was lost, even though it never became a part of court record, since it was prepared with knowledge that it was to be presented for fraudulent purpose.

4. Attorney and client ⊜⇒14—Attorneys are officers of court, and owe duty to assist in administration of justice.

Attorneys are officers of the court, and owe a duty to assist in the administration of justice, and to prevent court being misled by fraudulent and false affidavit.

5. Attorney and client ⊜⇒53(2)—Evidence in disbarment proceedings held to sustain finding that attorney assisted in preparing affidavit to deceive and defraud court.

In proceedings for disbarment of attorney, evidence *held* sufficient to sustain finding that attorney assisted in preparation of false affidavit intended to be presented for purpose of deceiving and defrauding court.

In Error to the District Court of the United States for the District of Minnesota; William A. Cant, Joseph W. Molyneaux, and John B. Sanborn, Judges.

A. J. Hertz was removed from office as attorney and counsel in the United States District Court for the District of Minnesota, and he brings error. Affirmed.

T. D. Sheehan, of St. Paul, Minn. (James Schoonmaker and P. J. Ryan, both of St. Paul, Minn., on the brief), for plaintiff in error.

Charles Bunn, of St. Paul, Minn., for the United States.

Before KENYON and BOOTH, Circuit Judges, and KENNAMER, District Judge.

KENYON, Circuit Judge. The United States District Court for the District of Minnesota removed plaintiff in error from his office as attorney and counselor of that court, and ordered his name stricken from the record of those entitled to practice therein. He brings writ of error.

One Leon Gleckman and others were indicted in 1922 in the United States District Court for Minnesota and charged with the crime of conspiracy to violate the National Prohibition Act (Comp. St. § 10138¼ et seq.). At the conclusion of the government's case, tried before Hon. Page Morris, said Gleckman and two other of the defendants. pleaded guilty to the charge of the indictment, and the case was dismissed as to the other five defendants. Plaintiff in error was one of the counsel for Gleckman in said case. Defendants were sentenced to terms of imprisonment in the federal penitentiary. Stays of execution of the sentence of Gleckman were granted, and during such time Gleckman employed other counsel, who prepared a motion and presented the same to the court to vacate Gleckman's plea of guilty and substitute a plea of not guilty. In support of said motion an affidavit of Gleckman was presented to the court in which he made charge of misconduct against the counsel who had represented him at the trial and at the entry of the plea of guilty, and claimed therein that he was frightened into making such plea; that he did not know or appreciate the character of the proceedings, and had been compelled to enter the plea against his will. This motion was denied by the court. Writ of error was taken to the United States Circuit Court of Appeals, where the government filed a confession of error, admitting the truth of certain portions of the Gleckman affidavit. By permission of the United States Circuit Court of Appeals, this confession of error was subsequently withdrawn. The case was heard by that court, and the judgment against Gleckman affirmed.

The misconduct charged against plaintiff in error is that at the time said motion was prepared he counseled with and assisted the attorneys for Gleckman in the preparation of the affidavit in support thereof, and assured counsel that the matters. stated therein were true and correct. While plaintiff in error had been one of the counsel for Gleckman, presumably he had retired from that position after the plea of guilty and sentence thereon had

been entered. In October, 1925, plaintiff in error, with other attorneys, was called before Judges Cant, Molyneaux, and Sanborn of the United States District Court for Minnesota, and was informed that the purpose of the inquiry was to ascertain the truth or falsity of the matter stated in the Gleckman affidavit. Plaintiff in error and others were sworn at said hearing, and these proceedings were subsequently filed by the court, and entitled "In the Matter of Summary Proceedings to Determine Whether or Not Contempt Proceedings Should be Instituted against Certain Attorneys and Counselors Practicing before This Court in Connection with Their Services in the Case of United States of America v. Leon Gleckman." February 2, 1926, plaintiff in error was served with copy of the complaint and charges signed by the three judges of the United States District Court for Minnesota, requiring him to appear and show cause why an order should not be entered striking his name from the roll of attorneys of that court and permanently disbarring him as an attorney thereof. A trial was had before said three United States District Judges. After hearing the evidence these judges made certain findings of fact with relation to the affidavit and the statements therein. The important parts thereof are as follows:

"That said charges of misconduct, and said statements as to the enfeebled and frightened condition of the said Gleckman, at the times referred to and the statement that he did not know or appreciate the character of the proceedings and the effect thereof, and that he was innocent of the charge against him, and had been compelled to enter the plea of guilty against his will, were wholly untrue, and that at all of the times herein referred to, this respondent knew of their falsity and knew that if they should be presented to and be believed by the court, the effect thereof would be to practice a gross fraud upon the court and to defeat justice. That, notwithstanding such knowledge on the part of respondent, he counseled with and assisted the attorneys for said Gleckman, on said motion and in reference thereto, aided in the preparation of said affidavit and gave said counsel assurance that the matters in said affidavit set forth were substantially true and correct. That in addition to the foregoing, in a certain summary hearing before the judges of this court, held at the Federal Building in the city of St. Paul, in said state and district, on the 9th day of October, 1925, at which the matters hereinbefore referred to were the subject of inquiry, the respondent herein, who was then and there duly sworn to tell the truth testified

under oath that in connection with the motion of said Gleckman hereinbefore referred to, he did not counsel with the said attorneys for said Gleckman, that he gave no aid in the preparation of the said affidavit and that he had no knowledge thereof until long after the same was presented to the court. That said statements and each of them were and are untrue."

The following conclusion of law was also announced by them:

"That the acts of the respondent, as hereinbefore set forth, constitute dishonorable conduct in the practice of his profession as an attorney and counselor at law, and in consequence thereof it is considered and adjudged that said respondent, Abraham J. Hertz, be and he hereby is removed from his office as an attorney and counselor of this court, and that his name be stricken from the roll of those entitled to practice therein. Dated February 18, 1926."

[1] The nature of disbarment proceedings has been stated by the Supreme Court of the United States in perhaps the leading case on that subject, Ex parte Wall, 107 U. S. 265, 288, 2 S. Ct. 569, 588 (27 L. Ed. 552): "The proceeding is not for the purpose of punishment, but for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them. Undoubtedly, the power is one that ought always to be exercised with great caution, and ought never to be exercised except in clear cases of misconduct, which affect the standing and character of the party as an attorney. But, when such a case is shown to exist, the courts ought not to hesitate, from sympathy for the individual, to protect themselves from scandal and contempt, and the public from prejudice, by removing grossly improper persons from participation in the administration of the laws. The power to do this is a rightful one; and, when exercised in proper cases, is no violation of any constitutional provision."

We quote also from 2 R. C. L. p. 1089, § 181: "Generally speaking, an attorney may be suspended or disbarred for such misconduct as shows him to be an unfit or unsafe person to enjoy the privileges and to manage the business of others in the capacity of an attorney, and it is usually held that any fault which would have been sufficient to prevent the admission of one as an attorney will justify his removal. It is not necessary that the attorney's misconduct should be such as would render him liable to criminal prosecution. If it shows that he is unfit to discharge the duties of his office, or is unworthy of confidence,

even though the conduct is outside of his professional dealings, it is sufficient. If an attorney is not honest, or is not moral, or is not of good demeanor, he may be disbarred, and should be. His office is a very badge of respectability, a patent of trustworthiness, derived from his position on the court's roll of counsel. He ought not to be suffered to pass for what he is not."

The inherent power exists in every court to disbar an attorney for improper professional conduct. Referring to this subject the Supreme Court of the United States said in Bradley v. Fisher, 80 U. S. (13 Wall.) 335, 354 (20 L. Ed. 646): "This power of removal from the bar is possessed by all courts which have authority to admit attorneys to practice. It is a power which should only be exercised for the most weighty reasons, such as would render the continuance of the attorney in practice incompatible with a proper respect of the court for itself, or a proper regard for the integrity of the profession." See, also, Selling v. Radford, 243 U. S. 46, 37 S. Ct. 270, 61 L. Ed. 726; Ex parte, In the Matter of David A. Secombe, 19 How. 9, 15 L. Ed. 565; Ex Parte Robinson, 86 U. S. (19 Wall.) 505, 22 L. Ed. 205; United States ex rel. Hallett v. Green (C. C.) 85 F. 857; In re Boone (C. C.) 83 F. 944; 6 C. J. p. 580, § 37; Weeks on Attorneys, § 80.

There is no dispute in this case concerning the law as to the general power of a court to protect itself by removing from the roll of attorneys admitted to practice therein one who has been guilty of such misconduct as to render him unfit longer to be intrusted with the duties and responsibilities belonging to the office of an attorney. If plaintiff in error knowingly assisted in preparing a false affidavit, to be used to influence the action of the court, as was found to be a fact by the trial court, then, of course, he has been guilty of such professional misconduct as to evidence moral unfitness for the position of attorney at the bar of said court, and the judgment of removal entered was fully justified.

[2] We refer to the questions raised in the assignments of error which are presented in argument. Plaintiff in error claims that the disbarment proceeding should be controlled both as to the grounds of disbarment and as to the limitation of time in which the action can be brought by the statutes of Minnesota, and that the action is barred by the Minnesota statute of limitations. While, of course, there are many cases in which the state statutes will be controlling in the federal court, they are not controlling in the matter of disbarment cases. The federal court has the power to

admit attorneys, regardless of state statutes, and likewise to disbar them. Its rights therein are not created, limited or controlled by any state statutes. Its power could be affected only by action of Congress and such action has not been taken.

[3] It is urged that the Gleckman affidavit was improperly received in evidence over the objection of plaintiff in error. This affidavit was a part of Complainant's Exhibit A. It is set forth in full in the printed transcript of record in this court in the case of Leon Gleckman v. United States. It appears from the evidence that the motion to vacate the judgment and the affidavit of Gleckman supposed to have been attached thereto were not filed for record in the office of the clerk of the United States District Court for the District of Minnesota. The original affidavit was not introduced in this hearing. No one seemed to know what became of it. Neither Mr. Sullivan, counsel for Gleckman, nor the United States district attorney was able to locate it. The affidavit was made a part of the bill of exceptions in the Gleckman case by virtue of a stipulation of the assistant United States attorney and the attorneys for Gleckman, and the bill of exceptions was filed with the clerk of the United States District Court of Minnesota on the 29th day of September, 1923. It further appears that the bill of exceptions was withdrawn from the office of said clerk by the office of Mr. Sullivan, the attorney for Gleckman, and that it has not been returned to the clerk, and its whereabouts is unknown.

The circumstances surrounding the disappearance of the affidavit are peculiar, and counsel for plaintiff in error in his brief expresses some suspicion in relation thereto. However, the correctness of the copy of the Gleckman affidavit was shown by an abundance of testimony. The United States district attorney testified that the copy in the record was a correct copy of the affidavit which had theretofore been served on his office. Mr. Sullivan testified that it was a correct copy. Mr. McAllister and Mr. Gleckman testified likewise. No one testified it was not. We think it cannot be seriously contended that the affidavit upon which the District Court acted in this proceeding was not a correct copy of the original Gleckman affidavit, which the evidence shows was lost or had mysteriously disappeared, and could not be produced by complainant.

It is insisted by counsel for plaintiff in error that the proceedings of courts of record can be proved only by the record itself or a properly authenticated copy. There is no attempt here to establish a court record as the basis of founding any rights thereon. The attempt is to show that plaintiff in error, Hertz, knew about the preparation of the Gleckman affidavit and assisted therein; that he knew matters therein stated were untrue; that he knew it was to be presented to the court for the purpose of inducing the court to set aside the judgment under Gleckman's plea of guilty. The evidence shows that the affidavit was submitted to the court, and if it never became a part of the court record it would make no difference as to the alleged misconduct of plaintiff in error. In any event, the original affidavit being lost, as shown by the evidence, the copy was sufficiently identified to allow its introduction in evidence.

[4] It is also claimed that the testimony of plaintiff in error at the hearing of October, 1925, hereinbefore referred to, was improperly received in evidence on the hearing in this case, it being alleged that the judges had no authority to administer an oath, because the Gleckman case had already been taken to the Circuit Court of Appeals on writ of error. But this proceeding was not part of the Gleckman case. This was a disbarment proceeding. The judges had a right to ask counsel the questions they did. There was a duty upon counsel's part to inform them as to the facts of the situation. No plea that the testimony sought might incriminate him was made by plaintiff in error, and no objection was made by him to answering the questions propounded by the judges. The judges were investigating a claimed fraud on the court. It was not only their right but their duty so to do. What more natural way than to call before them the attorneys connected with the case. Attorneys are officers of the court, and owe a duty to assist in the administration of justice and to prevent the court being misled by a fraudulent and false affidavit. We think it not important, however, as to what plaintiff in error may have said at this inquiry. It is not in dispute. He stated he had had no connection with preparing the affidavit, and he admits in his answer filed in this proceeding that he testified under oath before the court that he had not represented or assisted Gleckman in connection with his motion to withdraw his plea and for a new trial, and alleged that this testimony was true. If he had nothing to do with preparing the false affidavit then what he stated at the inquiry in October, 1925, is largely immaterial.

[5] The important and controlling question is: Was there evidence to sustain the findings of fact of the District Court that plaintiff in

error assisted in the preparation of the false affidavit? Mr. Sullivan swore that he had gone over the affidavit with plaintiff in error, and that he had made certain objections thereto; that changes were made in the original form of the affidavit by reason of such suggestions. McAllister testifies to practically the same thing. Supornick testifies that Hertz, plaintiff in error, stated: "I helped Sullivan make that affidavit, and was out of town about a couple of times during the trial, at a large expense, and that is why I sent you a bill for $500." Mr. Gleckman testifies also that Hertz told him that he helped Sullivan and McAllister make up the affidavit. Plaintiff in error denies all of these matters. It is evident that someone swore falsely in the trial court. That court saw the witnesses; had an opportunity to notice their demeanor on the stand, and evidently did not believe Mr. Hertz. Further, it seems that plaintiff in error presented a bill to Gleckman for $500 for legal services after the time it is claimed he rendered assistance in preparing the affidavit. Gleckman testified that he saw Mr. Hertz, after the time that Hertz was presumably out of the case, and after Mr. Sullivan had been employed, and before the affidavit in question had been made; that Mr. Hertz talked with him with reference to getting a new trial in the Circuit Court of Appeals, and told him if he would give him the sum of $5,000 he could go down and influence that court so that Gleckman would get a new trial; that after that time Hertz sent him a bill for $500; that Gleckman objected to paying this bill, thinking it was Hertz's fee for suggesting that he could for sufficient consideration influence the Circuit Court of Appeals.

Some kind of an arbitration was arranged with Mr. Supornick and Mr. Silberman acting as arbitrators. Mr. Gleckman made his statement before the arbitrators about Hertz wanting $5,000 to get a new trial in the Circuit Court of Appeals, and Hertz stated that he was entitled to pay for his trouble in "helping Mr. Sullivan and Mr. McAllister make up the affidavit." Both Supornick and Silberman testify to this and the matter seems finally to have been adjusted by Gleckman paying Hertz $250. Mr. Hertz attempts to explain this, but the explanation is not satisfactory. It is quite apparent that Hertz having failed to extract from Gleckman the $5,000 under the pretense that it was to be used in obtaining a new trial, was recouping somewhat by presenting a bill for services in helping to prepare the affidavit.

Counsel for plaintiff in error urge that it is unreasonable to suppose that Hertz would aid or assist in the preparation and presentation to the court of an affidavit reflecting upon himself. Of course, it does seem unreasonable that an attorney would assist in the preparation of an affidavit reflecting so seriously upon himself. The evidence shows, however, that he objected to references to himself therein or to anything alleged to have been said by Judge Morris to him. He knew of this affidavit in March, 1924, and made some objection to Judge Dickson concerning it; but he permitted the matter to rest, and took no steps with relation to it until February, 1925, when he discovered that a confession of error based upon the admitted truth of the affidavit had been filed in the United States Circuit Court of Appeals.

Counsel for plaintiff in error insist that there are suspicious circumstances as to the action of other parties in the case; that the loss of the affidavit of Gleckman is significant; that the false affidavit was presented by Sullivan and McAllister without any inquiry being made by them from the trial lawyers in the Gleckman case as to whether the statements therein contained reflecting on counsel trying that case were true or false; that Sullivan and McAllister were the ones to be benefited as they had a contingent fee of very large amount if they should secure a new trial. We assume these matters were duly considered and weighed by the trial court in its search for the truth and in arriving at its conclusion. We think some of the language of the memorandum opinion of the trial court should be given space in this opinion. We quote:

"Reputable members of the legal profession everywhere know, and all others must try to learn, that common honesty, as that quality is understood and appreciated by intelligent men, is the first requisite of an attorney and counselor at law. One may fail in other requirements, but, at his peril, he must not fail in this. There will be departures from right standards which will never come to the attention of the court or receive treatment at its hands. It is not the purpose, here, to be swift to believe evil of any one, but if complaints shall be made and proof adduced that any member of the bar, practicing before this court, has been guilty of bad faith, either to the court or to his client, in such manner as would tend to obstruct the course of justice, or substantially affect the interests of such client, the court will interpret its duty as requiring prompt and firm action, appropriate to the circumstances of the particular case. On the one hand, the good name of the pro-

fession and the large body of its membership must be maintained, and on the other, the public must be protected from incompetent and unscrupulous men, whose conduct would tend to bring that profession into disgrace."

As supplemental thereto we add the vigorous language of the Supreme Court of Connecticut in Fairfield County Bar ex rel. Samuel Fessenden et al. v. Howard W. Taylor, 60 Conn. 11, 17, 22 A. 441, 443, 13 L. R. A. 767, 770, referring to the duties of attorneys at the bar: "And he must have prudence, and tact to use his learning, and foresight, and industry, and courage. But all these may exist in a moderate degree, and yet he may be a creditable and useful member of the profession, so long as the practice is to him a clean and honest function. But possessing all these great faculties, if once the practice becomes to him a mere 'brawl for hire,' or a system of legalized plunder where craft and not conscience is the rule, and where falsehood and not truth is the means by which to gain his ends, then he has forfeited all right to be an officer in any court of justice, or to be numbered among the members of an honorable profession."

The findings of the three District Judges, sitting as the trial court, are entitled to great weight. The witnesses were all before them. They observed them and determined which were telling the truth. The case is full of contradictions of plaintiff in error by the other witnesses. The questions are peculiarly fact ones, and certainly under the record this court cannot say there was not substantial evidence before the trial court to warrant its judgment.

The same is affirmed.