## WILSON v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
April 25, 1928.

No. 7998.

1. **Contempt ⊜⊐72—Contemner cannot be punished with both fine and imprisonment (28 USCA § 385).**

A contemner cannot be punished under 28 USCA § 385, with both fine and imprisonment.

2. **Contempt ⊜⊐66(7)—Circuit Court of Appeals is confined to errors of law on writ of error to review conviction of criminal contempt.**

On writ of error to review judgment of conviction of criminal contempt Circuit Court of Appeals is confined to errors of law.

3. **Contempt ⊜⊐60(2)—Admission of evidence of conduct of kangaroo court by inmates of jail, in prosecution of guard for contempt for assault on federal prisoner, held prejudicial error (28 USCA § 385).**

In prosecution for criminal contempt under 28 USCA § 385, of guard of county jail for assault and battery on a federal prisoner, permitting inquiry as to so-called kangaroo court, conducted by inmates of jail, tending to hold defendant in some way responsible for intimated bad management and control, and court's comments thereon, *held* to have been prejudicial.

4. **Contempt ⊜⊐20—County jail guard, assaulting federal prisoner detained on mittimus issued by United States commissioner, held not guilty of contempt for violating order of court (Comp. St. Okl. 1921, § 8365; 18 USCA § 591; 28 USCA § 385).**

Where federal prisoner was detained in county jail as authorized by Comp. St. Okl. 1921, § 8365, pursuant to mittimus issued by United States commissioner under authority of 18 USCA § 591, *held* that prisoner was not being held under an order or writ of a court, and hence jail guard assaulting prisoner was not guilty of contempt under 28 USCA § 385, as having violated an order of the court.

5. **Contempt ⊜⊐34—Statute relating to contempts held limitation on power of inferior federal courts to punish for contempt (28 USCA § 385).**

28 USCA § 385, relating to contempts, is a limitation on the power of the inferior federal courts to punish for contempt.

6. **Contempt ⊜⊐34—Only court offended may punish for contempt for violating its order.**

It is the general rule that only the court which has been offended can exercise the power of punishing for contempt for violation of its order.

In Error to the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

Joe Wilson was convicted of criminal contempt, and he brings error. Reversed.

John T. Harley, of Tulsa, Okl., for plaintiff in error.

John M. Goldesberry, U. S. Atty., of Tulsa, Okl.

Before LEWIS, Circuit Judge, and SCOTT and DAVIS, District Judges.

LEWIS, Circuit Judge. [1, 2] Pursuant to order of court the district attorney filed an information charging defendant (plaintiff in error here) with criminal contempt, in that, defendant on June 4, 1927, while acting as guard at the Tulsa county jail, committed an inexcusable and unjustifiable assault and battery on one Leonard Grant, who was then and there held and detained in said jail as a federal prisoner on a mittimus regularly issued by a United States commissioner for the Northern district of Oklahoma on default of his giving bail to appear and answer the charge of having in his possession intoxicating liquor, which had been made against him. On trial by jury defendant was found guilty and sentenced both to imprisonment and to pay a fine. He brings the case here and specifies as reversible error (1) the overruling of his motion to quash the information, (2) the overruling of his motion for an instructed verdict of not guilty at the

close of all the evidence, (3) the admission of incompetent, irrelevant, and immaterial evidence, and (4) the imposition of a sentence of both fine and imprisonment. Admittedly the last assignment is well taken. A contemner cannot be punished with both fine and imprisonment. Section 385, title 28 USCA. Without more the case would have to go back for resentence, but we think there are more serious errors on the record that require consideration. We are confined to errors of law. Binkley v. United States (C. C. A.) 282 F. 244.

[3] The court, over defendant's objections, permitted the inquiry to take too wide a scope, prejudicial, we think, to the defendant. The general conduct of the jail was gone into; it being made to appear that the inmates maintained a court of their own and inflicted punishment on some of their number for violation of their own rules, one of which was not to report on other inmates; which had something to do, it was thought, with the assault on Grant. The evidence in that regard clearly had a prejudicial tendency to hold the defendant in some way responsible for the intimated bad management and control, though put in against his persistent objection that he was in no way responsible therefor, even if true. It had no tendency to show that the assault was without excuse or justification, and defendant claimed no such defense. When the judge persisted in asking questions about a kangaroo court, so called, defendant's counsel continued to object and said, "But defendant is not responsible for that and he excepts to it." Then this occurred:

"The Court: Now, let me understand you, Mr. Harley. Do you mean to say the man in charge of the jail is not familiar with what is going on up there? Is that what you want to tell me?

"Mr. Harley: Your honor, I just wanted to tell you just what I said.

"The Court: What is your contention on the matter?

Mr. Harley: My contention is that those questions are incompetent against this defendant because it is not shown that he is responsible for that if it does exist.

"The Court: Overruled.

"Mr. Harley: And he excepts to the court's questions on that."

[4] There is always some hazard about a judge taking over the examination of a witness. It is said he may under circumstances do it, but he does enough if he lets counsel do it, especially where counsel is competent and knows his case, as was the district attorney here, who had asked nothing about the jail management. A jury usually thinks a judge possesses superior knowledge of the law and when he asks a question they are impressed with its importance. Then the court's argument with counsel made it still more important and impressive. But there are other questions of law that should receive attention.

As many states have done, so Oklahoma passed a statute admitting federal prisoners to its jails for detention. Section 8365, Oklahoma Compiled Statutes 1921, reads:

"All sheriffs, jailers, prison keepers, and their deputies, within this state, to whom any persons shall be sent or committed, by virtue of legal process, issued by or under the authority of the United States, shall receive such persons into custody, and keep them safely until discharged by due course of the laws of the United States; and all such sheriffs, jailers, prison keepers and their deputies, offending in the premises, shall be liable to the same pains and penalties, and the parties aggrieved shall be entitled to the same remedies against them, or any of them, as if such prisoners had been committed to their custody by virtue of legal process issued under the authority of this state."

As early as 1815 the Supreme Court had under consideration a statute of Virginia, similar to that of Oklahoma. A debtor on a judgment rendered in the federal court was taken on execution and confined to Botetourt county jail. The judgment creditor recovered damages of the United States marshal for the escape of the judgment debtor from jail. This was reversed. The court in Randolph v. Donaldson, 9 Cranch, 76, 86, 3 L. Ed. 662, speaking through Mr. Justice Story, said:

"When a prisoner is regularly committed to a state jail by the marshal, he is no longer in the custody of the marshal, nor controllable by him. The marshal has no authority to command or direct the keeper in respect to the nature of the imprisonment. The keeper becomes responsible for his own acts, and may expose himself by misconduct to the 'pains and penalties' of the law. For certain purposes, and to certain intents, the state jail lawfully used by the United States, may be deemed to be the jail of the United States, and that keeper to be keeper of the United States."

We do not find the principle there announced has been since challenged. The jailer and his assistants, in holding a federal prisoner under such circumstances, become pro hac vice officers of the United States court; and section 385, supra, invests the court

with power to punish as a contempt "the misbehavior of any of the officers of said courts in their official transactions." The District Judge, in submitting the case to the jury, did not put it on that ground. In his instructions to the jury we find here and there these statements:

"The charge is against his violation of an order of the court. So this charge has relation to disobedience of an order of the court. But this contempt of court here is by reason of a violation of an order of court. The order of commitment in this case provides that he shall be safely kept in the jail. Now, the charge is, that there has been a violation of that order. And it is contempt of court to disobey an order of the court or decree or judgment of the court, to disobey it."

As a matter of fact the information did not charge contempt in violation or disobedience of an order of court. It alleged the facts and, charged that defendant's conduct was in unlawful and willful contempt of court.

In giving its instructions the court must have had in mind that clause of section 385 which makes it contempt, or rather recognizes the rule that it is contempt, for an officer to disobey or resist "any lawful writ, process, order, rule, decree, or command of the said courts." Cases like Ex parte Shores (D. C.) 195 F. 627, Sweptson v. United States (C. C. A.) 251 F. 206, In re O'Rourke (D. C.) 251 F. 768, and United States v. Hoffman (D. C.) 13 F.(2d) 269, Id. (C. C. A.) 13 F.(2d) 278, and United States v. Westbrook (C. C. A.) 13 F.(2d) 280, are not in point; for there the sheriff and his assistants held the prisoners under commitments issued on orders of the District Courts, and when they permitted the prisoners so held to go at large they disobeyed the orders and writs "of said courts."

In this case Grant was not so held, but on a mittimus issued by a United States commissioner, who acted in that regard solely under statutory authority conferred on him, which restricted him to the powers of an examining magistrate of the state. United States v. Mace (C. C. A.) 281 F. 635; section 591, title 18 USCA. That section, in part, reads:

"For any crime or offense against the United States, the offender may, by any justice or judge of the United States, or by any United States commissioner, or by any chancellor, judge of a Supreme or superior court, chief or first judge of common pleas, mayor of a city, justice of the peace, or other magistrate, of any state where he may be found, and agreeably to the usual mode of process

26 F.(2d)—14½

against offenders in such state, and at the expense of the United States, be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense."

Mr. Justice Field, while on the circuit, said this in United States v. Schumann, Fed. Cas. No. 16235, concerning the status, powers and duties of a commissioner when acting as a committing magistrate:

"The office of commissioner was created by the Act of February 20, 1812 [2 Stat. 679], and his duties were at first limited to taking acknowledgments of bail and affidavits. By several subsequent acts his powers have been greatly enlarged. Among other things, he is invested with all the authority to arrest, imprison, or bail offenders against the laws of the United States, which any justice of the peace or other magistrate of any of the United States can exercise under the thirty-third section of the Judiciary Act of 1789 (1 Stat. 91). That section provides that 'for any crime or offense against the United States, the offender may, by any justice or judge of the United States, or by any justice of the peace or other magistrate of any of the United States where he may be found, agreeably to the usual mode of process against offenders in such state, and at the expense of the United States, be arrested, imprisoned, or bailed, as the case may be, for trial before such court of the United States as by this act has cognizance of the offense.' The same act also authorizes the commissioner, upon any hearing before him, when the offense is charged to have been committed on the high seas, or elsewhere within the admiralty and maritime jurisdiction of the United States, in his discretion, to require a recognizance from witnesses for their appearance at the trial. He is thus made a magistrate of the government, exercising functions of the highest importance to the administration of justice. He is an examining and committing magistrate, bound to hear all complaints of the commission of any public offense against the laws of the United States in his district, to cause the offender to be arrested, to examine into the matters charged, to summon witnesses for the government and for the accused; and to commit for trial or to discharge from arrest according as the evidence tends or fails to support the accusation. For the faithful discharge of his duty in these particulars he alone is accountable. He has no divided responsibility with any other officer of the government; nor is he subject to any other's control."

In Todd v. United States, 158 U. S. 278,

282, 15 S. Ct. 889, 890 (39 L. Ed. 982), the court, speaking through Mr. Justice Brewer, said:

"That a commissioner is not a judge of a court of the United States within the constitutional sense is apparent and conceded. He is simply an officer of the Circuit Court, appointed and removable by that court. Rev. Stat. § 627 [28 USCA § 526, note]; Ex parte Hennen, 13 Pet. 230 [10 L. Ed. 138]; United States v. Allred, 155 U. S. 591 [15 S. Ct. 231, 39 L. Ed. 273]. A preliminary examination before him is not a proceeding in the court which appointed him, or in any court of the United States. Such an examination may be had not merely before a commissioner, but also before any justice or judge of the United States, or before any chancellor, judge of a state court, mayor of a city, justice of the peace, or other state magistrate. Rev. Stat. § 1014 [18 USCA § 591]. And it cannot be pretended that one of those state officers while conducting a preliminary investigation is holding a court of the United States. Technically, we speak of an examining magistrate, and not of an examining court. The distinction is recognized in the statutes, section 1014, by which sundry judicial officers of the United States and of the states are authorized to conduct an examination and imprison or bail the defendant, 'for trial before such court of the United States as by law has cognizance of the offense.' Also section 911 [28 USCA § 721], which provides that 'all writs and processes issuing from the courts of the United States shall be under the seal of the court from which they issue, and shall be signed by the clerk thereof.' But a commissioner, like a justice of the peace, is not obliged to have a seal, and his warrants may be under his hand alone. Starr v. United States, 153 U. S. 614 [14 S. Ct. 919, 38 L. Ed. 841]."

[5] Section 385 is a limitation on the power of the inferior federal courts to punish for contempt, Ex parte Robinson, 19 Wall. 505, 22 L. Ed. 205; and the power must be exercised within the restrictions therein named. We do not think it can be said that Grant was being held in jail under an order or writ of the trial court or of any other court.

[6] Furthermore, it is the general rule that only the court which has been offended can exercise the power; and inasmuch as the District Court had issued no writ and entered no order that Grant be detained in the Tulsa county jail, we can find no basis for a verdict, that defendant violated and disobeyed an order of said court. Ex parte Bradley, 7 Wall. 364, 372, 19 L. Ed. 214; In re Nevitt (C. C. A.) 117 F. 448, 455, 456; In re Debs,

158 U. S. 564, 595, 15 S. Ct. 900, 39 L. Ed. 1092.

We think assignments one and two are without merit.

For the reasons stated the judgment is reversed.