## CONLEY v. UNITED STATES.

### CORNEABY v. SAME.
### Nos. 9371, 9372.

Circuit Court of Appeals, Eighth Circuit.
May 25, 1932.

DAVIS, District Judge, dissenting.

Arthur T. Conley, of Minneapolis, Minn., pro se.

Frank Corneaby, pro se.

Lewis L. Drill, U. S. Atty., and George A. Heisey, Asst. U. S. Atty., both of St. Paul, Minn., for the United States.

Before KENYON and VAN VALKEN-BURGH, Circuit Judges, and DAVIS, District Judge.

VAN VALKENBURGH, Circuit Judge.

We have two separate appeals upon one transcript of record. Appellants were found guilty of contempt of the District Court for the District of Minnesota, and appellant Corneaby was sentenced to imprisonment for a period of two years. Appellant Conley received no punishment for contempt, but was also found guilty of unprofessional conduct, and was disbarred as an attorney and officer of said District Court.

The alleged misbehavior of appellants arose thus: July 5, 1930, one Erwin O. Huckenpoehler was arrested for violations of the National Prohibition Law (27 USCA). A complaint was filed by prohibition agent Knutson, and on July 7, 1930, Huckenpoehler was arraigned before United States Commissioner Abbott, charged with sales, possession, and the maintenance of a nuisance. He waived examination, pleaded not guilty, and furnished bond in the sum of $2,500 for his appearance September 8, 1930, in the District Court of the United States to answer said charges. The transcript of these proceedings, constituting the statutory return of the commissioner, was duly transmitted to the clerk of the United States District Court for the District of Minnesota at Minneapolis, and was filed July 7, 1930. The testimony of the government was that appellant Corneaby,

during the period under consideration, had no business except what is described as running errands for appellant Conley, by whom he was sent out on collections and with papers to serve; in short upon the various duties of confidential clerk in a law office. He learned of the charges against Huckenpoehler, the proceedings before the United States commissioner, and the filing of a transcript of those proceedings in the District Court. He told appellant Conley of this situation, and Conley telephoned Huckenpoehler to come to his (Conley's) office. It appears that Conley had acted as attorney for Huckenpoehler theretofore for a number of years. The next day Huckenpoehler appeared in response to Conley's message and was introduced to Corneaby. Thereafter appellants told Huckenpoehler that by reason of Conley's acquaintance and influence with one of Minnesota's Senators he could get the pending case against Huckenpoehler dismissed. That this would require $2,500, of which $1,000 should be raised and paid immediately. Ways and means of raising this money were discussed. Huckenpoehler was told that, of the initial $1,000, $800 should go to the Senator's headquarters in Minneapolis, and $200 should go to the prohibition agent in charge of the Minneapolis office, represented to be a personal friend of Corneaby. Prompt action was urged, because it was stated that the Senator would remain in Minneapolis only two or three days longer. Thereafter Conley and Corneaby, particularly the latter, repeatedly urged Huckenpoehler to raise the amount asked and give it to them for the purpose stated. He was told that the Prohibition Administrator and agent in charge were appointees of the Senator, and would do as he wished. It was pointed out to him that, since enforcement of the Prohibition Act had been transferred to the Department of Justice, and because of the numerous charges against him, he would probably receive a severe sentence, from four to seven years, in the penitentiary at Walla Walla, Wash., where the discipline was exceptionally severe. He was advised that, if he could not raise the money to get his case fixed, he had better get ready to "beat it" out of the country. Huckenpoehler testified that he was unable to raise the money demanded; and, being in fear of the severe sentence pictured by appellants, he took their advice and did not appear in the District Court in September, as required by the terms of his bond. September 8, 1930, the United States attorney filed against him in the District Court an information charging him with unlawful possession of intoxicating liquor, and with unlawful maintenance of a nuisance. Because of his failure to appear on that date his bond was forfeited, and a warrant was issued. He appeared voluntarily in the latter part of October, 1930, and, on December 2, 1930, entered a plea of guilty to the charges preferred against him. This case against appellants was instituted in March, 1931. Appellant Corneaby filed no written answer or return to the rule to show cause. He appeared in person April 1, 1931, and entered a plea of not guilty. Appellant Conley answered. He stated that Huckenpoehler, an old client, came to see him unsolicited, told him of his arrest and asked him (Conley) to represent Huckenpoehler's aunt, Selma Joel, in recovering his automobile on which she had a mortgage and which had been seized by the government; that all Conley's efforts had been confined to this employment. He also testified that on one occasion Huckenpoehler had asked him if he thought one O. R. Leen, an attorney, together with one of the Senator's campaign managers, could "fix" his case for $2,500. Appellant Corneaby testified that he first heard of Huckenpoehler August 10, 1930, through this same attorney, Leen; that Leen had asked him to tell Huckenpoehler that he (Leen) had seen the Senator about his case; that the Senator in turn had seen the prohibition agent in charge, who said that: "The only way Mr. Huckenpoehler could get out of his jam was to turn in three or four stills, to make a showing with the government, because some showing must be made in order to make disposition of his case." Both Conley and Corneaby denied making any offer to "fix" Huckenpoehler's case, and Conley denied that Corneaby was in any way engaged in soliciting business for him. The witness Leen denied categorically that he had sent Corneaby to Huckenpoehler with the message above set out, and both Huckenpoehler's wife and his aunt Selma Joel corroborated Huckenpoehler's testimony in substantial particulars. The court found that there was not a scintilla of evidence that the Senator had ever concerned himself with the proceedings against Huckenpoehler, and that the evidence fairly established beyond reasonable doubt: "That Corneaby is guilty of the charges contained in the information. That Corneaby was associated with Conley; that he conveyed to Conley the information that Huckenpoehler was in trouble, and procured Conley to call Huckenpoehler to his office, and that he, together with Conley, attempted to procure from Huckenpoehler $2,500 by means of misrepresentations and threats, as charged in the information and as

932

testified to by Huckenpoehler; that Corneaby was in fact acting as a solicitor for Conley, and that, while Corneaby was mainly responsible for what was done with reference to endeavoring to procure the $2,500 from Huckenpoehler, Conley aided and abetted him in that regard."

In his brief, appellant Corneaby says that: "For the purpose of argument appellant will make three major titles and adopt the authorities cited in co-defendant's brief: I. Information and offense, II. Sufficiency of the evidence, III. Judgment and order." Appellant Conley announces that the errors assigned will be taken up under the following points:

"I. The Court had no jurisdiction in this case for the reason that there was no criminal proceeding then pending in the United States District Court, District of Minnesota, 4th Division, wherein the said United States of America was plaintiff and Erwin O. Huckenpoehler was defendant.

"II. That the information does not state facts sufficient to constitute either an actual or constructive contempt of court under any law of the United States or under any inherent power, rule, practice, custom or usage of any court under the common-law or code system.

"III. That defendant Conley was purged by his written answer under oath.

"IV. Judgment of disbarment void and not sustained.

"V. There is insufficient evidence on which to find a verdict of guilty of contempt and of misconduct."

1. The question of jurisdiction first claims our attention. Section 268 of the Judicial Code (28 USCA § 385) provides: "The said courts shall have power to impose and administer all necessary oaths, and to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority. [Provided, That] Such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person to any lawful writ, process, order, rule, decree, or command of the said courts."

In this case we have to do only with such misbehavior as tends to obstruct the administration of justice. The specific point urged under this first specification relied on is that there was then no criminal proceeding pending in the District Court. Concerning this point, counsel for appellee say: "It is elementary, of course, that before it can be claimed that the administration of justice has been obstructed there must be a cause pending in the United States District Court in which it is possible to obstruct the administration of justice—hence the allegations of paragraph III aforesaid of said Information. The government claims that on and after July 7, 1930 (the day upon which the United States Commissioner held said Huckenpoehler and made to and filed in the United States District Court his return which included a transcript of the proceedings had before him and all the papers filed with and executed before him in the case of the United States v. Erwin O. Huckenpoehler), there was a criminal cause of action pending in the United States District Court in which the United States was plaintiff and said Huckenpoehler defendant."

If we were to accept this statement literally, then obviously the government's case must fail, because no cause of action in the strict sense was pending in any court of the United States at the time this misbehavior on the part of appellants is alleged to have taken place. Throughout the decisions we find various terms, such as "case," "cause," "prosecution," "proceedings," etc., to describe the nature of pending matters with relation to various and varying statutory provisions. Thus in Virginia v. Paul, 148 U. S. 107, 13 S. Ct. 536, 37 L. Ed. 386, it is held that: "A prosecution of a crime against the laws of a State, which must be prosecuted by indictment, is not commenced, within the meaning of section 643 of the Revised Statutes [28 USCA § 76], before an indictment is found; and cannot be removed into the Circuit Court of the United States by a person arrested on a warrant from a justice of the peace with a view to his commitment to await the action of the grand jury."

Again, in State of Virginia v. Felts (C. C.) 133 F. 85, it is held that a criminal prosecution has not been commenced within the meaning of the removal statute until an indictment has been filed, where an indictment (or, it would follow, an information) is required by state law.

In cases where an indictment is found in one division of a judicial district, and the prosecution is required to be held in the division in which the crime is committed, the term "prosecution" is used in a restricted sense, and the indictment is held to be no part of the prosecution in that restricted sense. Bigger-

staff v. United States (C. C. A. 8) 260 F. 926; Poffenbarger v. United States (C. C. A. 8) 20 F.(2d) 42; Salinger v. Loisel, 265 U. S. 224, 236, 237, 44 S. Ct. 519, 68 L. Ed. 989.

"To commence a suit is to demand something by the institution of process in a court of justice; and to prosecute the suit, is, according to the common acceptation of language, to continue that demand." Chief Justice Marshall in Cohens v. Virginia, 6 Wheat. 264, 408, 5 L. Ed. 257.

In Blyew et al. v. United States, 13 Wall. 581, 595, 20 L. Ed. 638, the Supreme Court was unable to perceive any distinction between "case" and "cause," and said: "We are unable to perceive any substantial ground for a distinction. The words 'case' and 'cause' are constantly used as synonyms in statutes and judicial decisions, each meaning a proceeding in court, a suit, or action. Surely no court can have jurisdiction of either a case or a cause until it is presented in the form of an action."

So, also, a preliminary examination before a United States commissioner is held not to be a case pending in any court of the United States within the meaning of section 5406, R. S. (18 USCA § 242), which defines as a crime conspiracy to prevent by intimidation or threat any party or witness from testifying in a court of the United States. Todd v. United States, 158 U. S. 278, 15 S. Ct. 889, 39 L. Ed. 982. If the proceeding before the commissioner is not a "case," we do not perceive how it could become so by the mere filing of a return of the commissioner's action in the registry of the District Court. Such is, in effect, the holding of this court in Wilson v. United States, 26 F.(2d) 215. Section 582, 18 USCA so far as applicable here, provides that: "No person shall be prosecuted, tried, or punished for any offense, not capital * * * unless the indictment is found, or the information is instituted, within three years next after such offense shall have been committed." This also is the law of Missouri. State v. McNeal, 304 Mo. 119, 262 S. W. 1025. Compare Ex parte Lacey, 6 Okl. 4, 37 P. 1095, and State v. Rank, 162 Minn. 393, 203 N. W. 49.

From the foregoing it would appear that in a strict legal sense a criminal cause or case is not pending in a court of the United States until an indictment is returned or an information filed. However, the Supreme Court in Post v. United States, 161 U. S. 583, 587, 16 S. Ct. 611, 613, 40 L. Ed. 816, uses this language: "Criminal proceedings cannot be said to be brought or instituted until a formal charge is openly made against the accused, either by indictment presented or information filed in court, or, at the least, *by complaint before a magistrate.*" (Italics ours.)

And in Southworth v. United States, 151 U. S. 179, 185, 14 S. Ct. 274, 276, 38 L. Ed. 119, Mr. Justice Brewer, speaking for the court with respect to a commissioner's claim for fees on account of "cases" heard by him, said: "That when the defendant is arrested, and examination held, there is a 'criminal case,' is clear."

And in Counselman v. Hitchcock, 142 U. S. 547, 12 S. Ct. 195, 198, 35 L. Ed. 1110, the Fifth Amendment to the Constitution, which provides that no person shall be compelled in any criminal case to be a witness against himself, was involved. The question was whether this applied to any case in which a witness was required to testify under oath, or whether the protection was confined to a criminal case against that witness himself as a defendant. The Supreme Court held that the protection extended to every proceeding in which a party is called upon to testify, and that "the case before the grand jury was therefore a criminal case" within the meaning of the Fifth Amendment. It was pointed out that a criminal prosecution under the Sixth Amendment is much narrower than a "criminal case" under the Fifth Amendment. Compare United States v. Patterson, 150 U. S. 65, 14 S. Ct. 20, 37 L. Ed. 999, and Hale v. Henkel, 201 U. S. 43, 26 S. Ct. 370, 50 L. Ed. 652. In United States v. Barber, 140 U. S. 177, 11 S. Ct. 751, 35 L. Ed. 398, hearings before a United States commissioner, in which a recognizance is acknowledged, are characterized as cases. In most state jurisdictions, whether by the terms of statute or in the absence of statute, a criminal prosecution is held to be commenced by the filing of a complaint before a magistrate and the issuance of a warrant, at least if this is followed by arrest and by binding over to compel appearance and answer in a court of general jurisdiction. State v. Hughes, 96 Miss. 581, 51 So. 464; State v. Waterman, 75 Kan. 253, 88 P. 1074; Baskins v. State, 75 Tex. Cr. R. 537, 171 S. W. 723; State v. Morrow, 90 Ohio St. 202, 107 N. E. 515; Hartnett v. State, 42 Ohio St. 568; People v. Clark, 33 Mich. 112; Bryant v. State, 158 Ala. 26, 48 So. 543; Ross v. State, 55 Ala. 177; State v. Groome, 10 Iowa, 308; Flick v. State, 22 Ind. App. 550, 51 N. E. 951.

Counsel for appellee, in their brief, present the following argument: "By R. S. 1014 (18 U. S. C. § 591 [18 USCA § 591]) it is provided that a United States Commissioner, among others, has the power, for any offense against the United States, to arrest, imprison, or bail the offender agreeably to the usual mode of process against offenders in such state. The words 'mode of process' are equivalent to 'mode of proceeding.' (See authorities cited in notes 5 and 6, section 591, title 18, USCA). Thus it is that the relationship of a United States Commissioner in the District of Minnesota to the United States District Court for the District 'of Minnesota, in criminal proceedings, under the penal laws of the United States, is identical with the relationship that exists between a state magistrate and the State District Court in preliminary criminal proceedings under the penal laws of the State of Minnesota and the procedure in each instance becomes identical."

In support thereof they cite State v. Dlugi, 123 Minn. 392, 143 N. W. 971; State v. Richardson, 34 Minn. 115, 24 N. W. 354; and quote from State v. Grace, 18 Minn. 398, 400 (Gil. 359), as follows: "A prosecution is pending, in the sense in which our statutes use the words, from the commencement of proceedings before a magistrate against a person charged with a public offense * * * and where such person has been held to answer in the district court the prosecution is thenceforward pending in that court."

In United States v. Berry et al. (D. C.) 4 F. 779, it is held that a United States commissioner, when acting as an examining magistrate, is a mere officer of the court, and that such commissioner "is subject to the control of the court when acting as an examining magistrate, and the court can assume control of the proceedings whenever justice may require that it should be done."

This case is cited with approval by the Supreme Court in Collins v. Miller, 252 U. S. 364, 369, 40 S. Ct. 347, 349, 64 L. Ed. 616, holding that the district court has "authority to assume control in the preliminary stages of matters of which it has the final decision under the law." This authority in the district court is restated by Mr. Justice Butler in Go-bart Co. v. United States, 282 U. S. 344, loc. cit. 353, 51 S. Ct. 153, 156, 75 L. Ed. 374, saying further: "They [commissioners] are authorized by statute in respect of numerous matters, and the relations between them and the district courts vary as do their official acts."

A case which we think has direct bearing upon this phase of the present controversy is Southern Surety Co. v. Oklahoma, 241 U. S. 582, 36 S. Ct. 692, 694, 60 L. Ed. 1187. Upon the admission of Oklahoma to statehood, by concurrent action of Congress and the state, it was provided that: "All prosecutions pending in the temporary courts of the Indian Territory, for offenses which would not have been cognizable in a court of the United States had they been committed within a state, were to be proceeded with in the courts of the state, as successors to the temporary courts."

In that case a preliminary hearing had been held, and the accused had been bound over for his appearance in the temporary court at McAlester, at the next regular term, and thereafter statehood intervened and an indictment was returned in the newly organized state court at that place. The accused did not appear, his bond was forfeited, and judgment in the state court was entered against the surety company, which contended that that court was without jurisdiction. Mr. Justice Van Devanter, speaking for the Supreme Court, said: "Because no indictment was returned in the temporary court at McAlester before the state was admitted, it is contended that this prosecution was not 'pending' in that court in the sense of §§ 16 and 20. These sections included all pending 'causes, proceedings, and matters,' as well as 'prosecutions' and 'cases,' and evidently were designed to be very comprehensive. The accused not only was held by a magistrate to await the action of the grand jury at the next term of the temporary court, but gave bail for his appearance in the court at that term. After this was done we think a prosecution or proceeding was pending in the court in the sense of the statute. That no indictment was returned in that court is explained by the fact that the court, through the state's admission, went out of existence before an indictment could be found and returned in regular course."

It would thus appear that the pendency of something less than a "case" or "action" in a strict legal sense may be sufficient to confer jurisdiction upon a court to which a defendant is recognized to appear by a committing magistrate, there to await the action of a grand jury or the filing of an information. It is conceded that the function of a United States commissioner is confined to the preliminary stages of a prosecution; that he has no further control over the matter after his transcript has been filed in the

District Court. United States v. Napela (D. C.) 28 F.(2d) 898. Certainly the "proceeding" does not die with that action. It continues to exist in the court of which the commissioner is an officer, and upon which Congress has conferred authority to proceed, without interruption, to a final determination of the controversy. In our opinion, then, at the time when the alleged acts of misbehavior were committed, there was a pending proceeding in the District Court of the United States at Minneapolis, Minn., and that that court had jurisdiction to punish contempts of its authority, and to protect its jurisdiction against obstruction in the administration of justice.

II. The information with sufficient clearness apprised appellants of the nature of the offense with which they were charged. Aaron v. United States (C. C. A. 8) 155 F. 833, 836.

"There is no fixed formula for contempt proceedings, and technical accuracy is not required." Schwartz v. United States (C. C. A. 4) 217 F. 866, 868; Kubik v. United States (C. C. A. 8) 57 F.(2d) 477, decided March 15, 1932.

"Contempt proceedings are sui generis, being neither civil actions nor prosecutions for offenses within the ordinary meaning of such terms, and technical accuracy in such proceedings is not required, and contention that information was bad for duplicity was therefore without merit." Armstrong v. United States (C. C. A. 7) 18 F.(2d) 371.

If appellants considered the charges too indefinite to enable them to prepare their defense, their remedy was to apply for a bill of particulars. This they failed to do. Bowles v. United States (C. C. A. 4) 50 F. (2d) 848.

The power to punish for contempt inheres in all courts. Such proceedings are sui generis, and are "neither civil actions nor criminal prosecutions, as ordinarily understood." Myers v. United States, 264 U. S. 95, 44 S. Ct. 272, 68 L. Ed. 577.

Such informations, presented by the United States attorney, may be verified on information and belief. Creekmore v. United States (C. C. A. 8) 237 F. 743, L. R. A. 1917C, 845; Kelly v. United States (C. C. A. 9) 250 F. 947.

"Inherent power exists in every court to disbar an attorney for improper professional conduct." Hertz v. United States (C. C. A. 8) 18 F.(2d) 52, 54; In re Robinson, 19 Wall. 505, 512, 22 L. Ed. 205.

It is required, only, that, before the judgment of disbarment is rendered, the attorney should have notice of the charges against him and be given opportunity for explanation and defense. These requirements were fully met. The information, being informal in character, is not vulnerable to the charge of duplicity. Creekmore v. United States (C. C. A. 8) 237 F. 743, 748, L. R. A. 1917C, 845.

III. Defendant Conley contends that his return and general denial under oath purged him of the charges preferred in the information, and that the case against him should have been dismissed. This is too broad a statement of the law. That effect of a mere denial under oath may result only when the contempt inheres in the intent with which an ambiguous act is done. Bowles v. United States (C. C. A. 4) 50 F.(2d) 848. Here, if the acts complained of were done, no ambiguity exists. The intent inheres in the very nature of the misconduct and is presumed. The question presented is not the intent with which the act is done, but whether it was done. As said by the late Judge Sanborn, concurring in Boyd v. Glucklich (C. C. A. 8) 116 F. 131, loc. cit. 142: "Whether or not the party charged has purged himself of the contempt is always to be decided upon a careful consideration of all the evidence produced for and against him."

Specifications IV and V may be considered together. The first contention is that the acts complained of did not constitute misbehavior so near to the presence of the court as to obstruct the administration of justice. It is also urged that the alleged offer to fix Huckenpochler's case was not accepted, and therefore that the administration of justice was not thereby obstructed. We think the applicable rules are stated by this court in Froelich v. United States, 33 F.(2d) 660, to wit:

"Conduct which tends to obstruct untrammeled and unprejudiced exercise of judicial power is punishable contempt, under Judicial Code, § 268 (28 USCA § 385), irrespective of place where act was committed.

"Acts complained of, to constitute 'contempt' of court, under Judicial Code, § 268 (28 USCA § 385), need not actually obstruct administration of justice, or necessarily have that result, if their tendency is of that character."

In the body of his opinion, Judge Otis says: "Whether an act, then, is within section 268, depends, not on the place where it is committed, but on its character. If it tends to obstruct and prevent the untrammeled and unprejudiced exercise of the judicial power, it is punishable contempt."

Compare United States v. Toledo Newspaper. Co. (D. C.) 220 F. 458, 487, and same case, in 247 U. S. 402, 38 S. Ct. 560, 62 L. Ed. 1186. In the latter case loc. cit. 421 of 247 U. S., 38 S. Ct. 560, 565, the Supreme Court said: "The wrong depends upon the tendency of the acts to accomplish this result without reference to the consideration of how far they may have been without influence in a particular case."

It can scarcely be denied that an offer to "fix" a criminal case and to procure its dismissal for a consideration of $2,500 is misconduct, having a tendency to obstruct the administration of justice. But the argument is that this offer was not accepted, and was therefore ineffective, and that no charge of contempt can be predicated upon the advice which caused Huckenpoehler's failure to appear in the District Court in obedience to the terms of his recognizance. There should be no uncertainty with respect to the meaning of the word "obstruct," as employed in this contempt statute. In the dictionary it is defined: "To hinder or prevent from progress; check; stop; also to retard the progress of; make the accomplishment of difficult and slow." It has many synonyms of like import. That is exactly the effect upon a prosecution which results from inducing a defendant in a criminal case to default in his appearance. It is true that it has been held that failure of an accused to appear for trial does not constitute contempt, but merely a violation of the terms of his appearance bond. State v. Jordy, 161 La. 104, 108 So. 229; In re Dill, 32 Kan. 668, 5 P. 39, 49 Am. Rep. 505; In re Kessler, 32 Kan. 693, 5 P. 50, this upon the ground that the remedy is a forfeiture of the bond; its penalty being the measure of punishment for the default. From this it is argued that if such conduct does not constitute contempt in the accused it cannot amount to such in one who advises and causes the default. Ingle v. State, 8 Blackf. (Ind.) 574, is cited in support of this position. In that case a defendant was advised by his attorney that, if he could not procure a continuance otherwise, "he then could escape and forfeit his recognizance, which would work a continuance of said cause un-

til the next term at a trifling cost." It was held that the attorney was not guilty of contempt for giving this advice. Without expressing approval of such strategy on the part of counsel, it may be conceded that much latitude is allowed an attorney in the bona fide defense of a client. In the instant case, no such relationship exists. Neither Conley nor Corneaby were acting as attorney for Huckenpoehler. And if it be conceded that a defendant is not guilty of contempt in failing to appear for trial, but merely violates the terms of his recognizance, we cannot accord the same immunity to a third party who brings about this interruption in the administration of justice, and who is not subject to the same sanction. This court has held that a third party, stranger to the bond, who corruptly persuades or causes an accused not to appear in court in accordance with the condition of his recognizance, is guilty of obstructing the administration of justice. Astwood v. United States (C. C. A. 8) 1 F.(2d) 639, 641. In that case the holding was extended to a surety on the bond. The act of appellants in this respect was so interwoven with the proposal corruptly to procure a dismissal of the case, that the whole transaction is affected by the same taint. Abuses of this nature bring great discredit upon the administration of the criminal law, and neither strained nor strict construction should be indulged to discharge the guilty. The evidence in this case was amply sufficient to justify the conclusions reached by the District Court. Its judgment should not be disturbed except in case of a clear miscarriage of justice. Its decision was reached after full hearing and mature deliberation, and should be accorded great weight. The extent of the punishment, when not grossly excessive, lies within the discretion of the court. Creekmore v. United States, supra; Hertz v. United States, supra.

It follows from what has been said that appellants were not entitled as of right to a jury trial, and none was demanded. McCourtney v. United States (C. C. A. 8) 291 F. 497, 499. Appellant Conley was not punished for the contempt, which must be by fine or imprisonment. His disbarment was expressly placed upon the court's finding of his "unfitness to be an officer of this court." Appellant Corneaby complains that the court erred in failing to appoint counsel for him. No demand for such appointment was made. It appears that at the opening of the trial Mr. Monaghan, counsel for ap-

pellant Conley, volunteered to act for appellant Corneaby. This appeared to be satisfactory to Corneaby, and was accepted by the court. As shown by the record, Mr. Monaghan acted for appellant Corneaby throughout the trial.

We have carefully considered the errors assigned by appellants, and have not confined ourselves to those relied upon in brief and argument. We find no reversible error, and the judgments accordingly are affirmed.

DAVIS, District Judge, dissents.