UNITED STATES of America ex rel. the Honorable William J. LYNCH, Petitioner,

v.

Gerald M. WERKSMAN, Respondent.

No. 70 CR 291.

United States District Court,
N. D. Illinois, E. D.

Nov. 19, 1970.

William J. Bauer, U. S. Atty., Chicago, Ill., for petitioner.

John Powers Crowley, Chicago, Ill., for respondent.

## MEMORANDUM OPINION

WILL, District Judge.

Respondent in this litigation is moving for the discharge of the Rule to Show Cause issued against him by the Honorable William J. Lynch, United States District Judge, Northern District of Illinois, on May 28, 1970, for alleged indirect criminal contempt of court. That Rule is predicated upon certain statements allegedly made by respondent to a person who was then his client. The rule "alleges a single specification of indirect criminal contempt based on purported conduct comprised of a misleading assertion by respondent (to his client) as to the future disposition of a criminal case, and his further assurance as to the certainty of that disposition because of an alleged personal relation between respondent and the judge." For the reasons stated below, we conclude that respondent's alleged statements, while they may raise questions of unprofessional conduct, did not constitute contempt of court and grant his motion to discharge the Rule to Show Cause.

At the outset, we must note what is not involved in the instant Rule. There are no allegations or suggestions of bribery, corruption, or undue influence upon the judge by the respondent or anyone else. Nor are there any allegations that respondent promised or suggested to his client that he could or would either directly or indirectly bribe the judge, "fix" the case, use undue influence, or in any way "collect" upon a prior debt. At most, respondent can be charged with predicting to his client in an out-of-court colloquy what the disposition of a pending criminal indictment against the client would be if the latter were to plead guilty based upon his prior knowledge as a lawyer of the judge's predisposition and his prior friendly relationship with the Court.

 A United States Court has power to punish contempt of its authority that includes the misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice and the disobedience or resistance to its lawful decrees, orders, rules, or commands. 18 U.S.C. § 401. A United States Court, however, is not empowered to punish as contempt any action or statement merely because it may display disrespect for the Court or because it recognizes that judges, notwithstanding their high obligation to administer justice in a fair and impartial manner, have mannerisms, idiosyncrasies, predispositions, and predilections that make each judge somewhat unique in his handling of cases. If every disrespectful comment of losing counsel and litigants were to constitute criminal contempt, the prison population in the United States would be substantially increased and the First Amendment would have a substantial new exception to its protection. For an action or statement that displays disrespect for a court to constitute contempt, it must be of such character that a finding can be made that the action in fact obstructs the administration of justice.[1]

 Suggestions in advance of court action that the judge can be "bought" or

1. See, e. g., United States ex rel. Robson v. Malone, 412 F.2d 848 (7 Cir. 1969), where a contempt citation was upheld for defendants' failure to stand when the trial judge entered the courtroom, based not on any disrespect shown for the court but upon a finding that the requirement of standing had a direct effect on the administration of the processes of justice; United States v. Schiffer, 351 F.2d 91 (6 Cir. 1965), cert. den. 384 U.S. 1003, 86 S.Ct. 1914, 16 L.Ed.2d 1017, where derogatory comments about a judge directed to him were held to be contemptuous, not because of their mere derogatory nature, but because they were calculated to place undue influence upon the judge in making rulings, which influence clearly tended to obstruct the administration of justice.

comments afterwards that the case in fact was "fixed" may constitute contempt. *See, e. g.*, Fox v. United States, 77 F.2d 210 (4 Cir. 1945); Conley v. United States, 59 F.2d 929 (8 Cir. 1932). But we are not presently dealing with that situation because the alleged contemptuous statements here in no way suggest corruption. The respondent, at worst, stated to his client in preparing his defense strategy that under all the relevant circumstances, including the fact that the judge "owed him a favor," a specific sentence would most likely be granted upon a guilty plea. No suggestion was made to the client that respondent would see the judge, that he would attempt to influence the judge, or that he believed himself capable of influencing the judge.

Predictions by a lawyer to a client concerning a likely disposition of a case, even when those predictions include statements to the effect that the lawyer's relationship with the judge is favorable or so good that the judge will undoubtedly do what he customarily does, cast no disrespect upon a judge and manifestly must be distinguished from a suggestion of a judge's corruption. Analysis that attempts to predict the effects of various potential courses of action that could be taken in litigation is "standard operating procedure" for a lawyer who sincerely is representing the full interests of his client. A failure to include in the list of factors to be analyzed the relationship of the judge to the lawyer would overlook the inescapable fact that judges are no less human beings who embody predispositions, strengths, and deficiencies, than are their ungowned brethren. Such failure would be the deletion of one element from the base upon which an attorney must make his educated and professional recommendation to his client concerning the latter's future course of conduct. We hold, therefore, that the statements herein alleged to have been made may not be classified as contempt of court.

This conclusion is buttressed by In Re Bull, 123 F.Supp. 389 (D.Nev.1954), the case factually closest to the situation alleged in the instant Rule that research or the parties have uncovered. In that case, an attorney had written a letter to his client in jail, which letter became the basis for the contempt citation, indicating that he doubted an appeal of the conviction would be successful because the record of any trial in the judge's court was always emasculated when an appeal was taken and because the trial judge had a friend on the Court of Appeals, but that the attorney would nevertheless try for a reversal on appeal.

The court was asked to rule that no private communications between an attorney and his client could ever be the basis of a disciplinary proceeding against a lawyer. The court refused to accept such a broad rule, but nevertheless dismissed the disciplinary proceedings holding that a private communication by a lawyer to his client when he is advising the latter about the conduct of his defense cannot be the basis for disciplinary action. The court's rationale was predicated upon its belief that the public policy favoring protection of the integrity of the courts must also accommodate the public policy of protecting the attorney-client relationship in criminal cases. 123 F.Supp. 389, 392. We agree with the rationale of the *Bull* court.

Because the predictions by respondent involved herein contained at most a professional estimate of the likely disposition of a case by a judge based upon his knowledge of the judge's practices including the general relationship between respondent and the judge, this action cannot be deemed contemptuous.

The Rule to Show Cause, therefore, should be discharged and the cause dismissed. An appropriate order will enter.