248 P.2d 884

CHITWOOD v. EYMAN, Sheriff of Pima County.

No. 5719.

Supreme Court of Arizona.

Oct. 7, 1952.

Edward W. Scruggs, Tucson, Shute & Elsing, Paul H. Primock, Phoenix, for petitioner.

Robert Morrison, County Atty., Norman Herring, Deputy County Atty., Tucson, Fred O. Wilson, Atty. Gen., for respondent.

LA PRADE, Justice.

This matter comes before the court on account of a writ of habeas corpus issued out of and returnable to this court, directed to and commanding the Sheriff of Pima County, Arizona, to show cause for the alleged illegal detention and incarceration of one E. B. Chitwood, petitioner for the writ.

From the petition for and the return to the writ it appears that on the 5th day of September, 1952, a complaint in writing was lodged with the Hon. Lee Garrett, one of the presiding Superior Court judges of Pima County, acting in the capacity of a magistrate. This complaint was subscribed and sworn to by Mr. Norman Herring, and contained two counts. The first count charged the defendant, Fred O. Wilson, Attorney General of the State of Arizona, with the crime of conspiracy alleged to have been committed some time between July 1, 1948 and January 1, 1951. Generally, this count charged that the said Fred O. Wilson had conspired and agreed with numerous named individuals to "pervert and obstruct justice and the due administration of the laws of the State of Arizona and in particular did conspire and agree to violate Article 27, Chapter 43, A.C.A.1939." It was also alleged that in furtherance of and pursuant to the conspiracy the defendant committed certain overt acts enumerated therein, namely:

1. That defendant offered the sum of $800 to $1000 a month to Maurice G. Guiney, a Deputy Sheriff of Pima County, Arizona, with intent to influence him to permit slot machines and gambling houses to operate within Pima County, Arizona.

2. That Fred O. Wilson received, or agreed to receive, various sums of money from persons in Pima County upon the agreement or understanding that the opinion or action of Fred O. Wilson, as Attorney General, would be influenced thereby upon any matter concerning enforcement of gambling laws of the State of Arizona.

3. That the defendant interceded in a dispute between owners and operators of slot machines in Tucson for the purpose of settling a dispute between the said slot machine owners and operators, to the end that certain owners would not destroy slot machines in various locations in Pima County, and particularly that the machines of one Charles Waite would not be molested.

Count 2 of the complaint alleges that between January 3, 1949 and January 1, 1951, defendant committed the crime of bribery in Pima County, Arizona, charging that he, in his official capacity, received or agreed to receive various sums from various persons, upon an agreement and/or understanding that his opinion and/or action would be influenced thereby upon any matter concerning the enforcement of gambling laws of the State of Arizona.

Petitioner appeared in response to a subpoena, at which time the magistrate directed Mr. Norman Herring, appearing as a Deputy County Attorney and special prosecutor, to conduct the examination of the witness. At this time the petitioner was sworn as a witness and gave some testimony.

On advice of counsel the witness refused to answer the following two questions:

1. "Isn't it true, Mr. Chitwood, that during the years of 1949 and 1950 you engaged in operating a gambling house or establishment within Pima County, Arizona?"

2. "Mr. Chitwood, did you at any time during 1949 or 1950 pay any money to Fred Wilson, Fred O. Wilson, attorney general of the State of Arizona, for the purpose of influencing his actions one way or another in regard to the enforcement of the gambling laws of the State or in regard to his rights or duties in the supervision of the county attorney of Pima County in relation to the enforcement of those same gambling laws; did you ever pay him any money, in other words, as a bribe?"

The refusal was upon the announced ground that his answers might tend to incriminate him. At this time the prosecutor read to Mr. Chitwood the provisions of Article 2, Section 19 of the Constitution, and the provisions of Section 43–2715 of A.C.A. 1939, relative to immunity, and advised him that on account of the constitutional and statutory provision he was not exempt from testifying, and that the Constitution and statute extended immunity. His counsel then advised him that at that time there was presently pending against the witness, in the Superior Court of Pima County, two indictments, one charging perjury on account of his answers to similar questions propounded to him before the grand jury which returned the indictments. The magistrate advised the wit-

ness that it was his opinion that on account of the constitutional and statutory provisions referred, to, no prosecution on account of any disclosures made under compulsion could be had against him, and then directed the witness to answer each of the questions. Refusal was again made, whereupon the magistrate announced that in view of the witness' attitude and position, the witness was in direct contempt of court, and relying on Section 21–935, A.C.A.1939, the magistrate adjudged the witness to be in contempt and ordered him "committed to the Pima County jail for contempt, there to remain until you shall consent to give evidence by answering the questions propounded to you or until discharged by law."

At the conclusion of his hearing the magistrate announced he was of the opinion that reasonable grounds existed to believe that an offense had been committed by the person accused in the complaint, and ordered that a warrant for the arrest and apprehension of the defendant should issue, which was then and there issued. On September 8th the court reconvened for the purpose of entertaining a motion of the contemnor seeking his release, upon the ground and for the reason that the proceedings out of which the order of arrest had issued had terminated. It was asserted that the examination of the contemnor had been for the purpose of determining whether a warrant of arrest should issue; that the magistrate had determined that it should issue; that it had issued, and suggesting that the answers sought could now be of no assistance to the magistrate at that time (time of the motion), and further insisting that the magistrate had no authority or power to bring about or order the indefinite imprisonment of Chitwood. upon a judgment of contempt.

These contentions are reasserted here. Therefore, it is necessary for us to determine the jurisdiction and power of the magistrate in the instant circumstances.

It must be remembered that by the provisions of Chapter 8, Laws of 1939, now appearing in Section 19–202 to 19–204, the legislature conferred upon the Supreme Court the right to promulgate rules regulating pleading, practice and procedure in judicial proceedings in all courts of the state, and further provided that

"All statutes relating to pleading, practice and procedure, existing at the time this act takes effect shall be deemed to be rules of court and shall remain in effect as such until modified or suspended by rules promulgated pursuant to this act."

The court adopted a code of criminal procedure, by rules effective April 1, 1940. These adopted rules are not all-inclusive by virtue of the provisions of Chapter 8, supra. By the provisions of Section 4927, R.C.A.1928, now appearing as Section 44–101, A.C.A.1939, it is provided that

"A magistrate is an officer having power to issue a warrant for the ar-

rest of a person charged with a public offense. The chief justice and the judges of the Supreme Court, the judges of the superior court, justices of the peace and police magistrates in cities and towns are magistrates."

■ These rules of criminal procedure, Rules Cr.Proc. Sec. 1, Sec. 44–102, A.C.A. 1939, provide that

"When a complaint is made to a magistrate that an offense has been committed, he shall examine on oath the complainant and any witness he may produce, take their depositions and cause them to be subscribed by the persons making them."

It is provided by Section 4929, R.C.A. 1928, that

"When such complaint is laid before a magistrate, he may also examine under oath, the complainant or prosecutor and may subpoena and examine witnesses as to the truth of such complaint; and if the county attorney so directs, he must subpoena and examine such witnesses. If the magistrate be satisfied from the complaint and from the examination, if an examination be had, that the offense complained of has been committed, and that there is reasonable ground to believe that the defendant has committed it, he shall issue a warrant for the arrest of the defendant."

It will be noted that this section has not been carried forth in Arizona Code An-

notated of 1939. This for the reason that the compiler of the 1939 Code was of the opinion that this section was substantially carried forward in Rules of Criminal Procedure, Sections 1 and 2, now appearing as Section 44–102, 44–103. See note to Sec. 44–102. Section 4929, R.C.A. 1928 is, however, more comprehensive than the Rules of Criminal Procedure, Sections 1 and 2, in that it extended to the magistrate the power to subpoena and examine witnesses as to the truth of the complaint and compelled the issuance of subpoenas if so directed by the county attorney. We believe that the provisions of Section 4929 should have been carried forth into the 1939 Code, and that its provisions not modified or suspended by subsequent rules are still in effect. The compiler of the 1939 Code did carry forth Section 4928, R.C.A.1928, the same now appearing as Section 44–301, A.C.A.1939. Under the provisions of said Section 4929 the magistrate clearly was within his authority in subpoenaing Chitwood to appear and answer questions.

■■ By the written complaint laid before one of the Superior Court judges of Pima County, said judge was authorized in his capacity as a magistrate to determine whether reasonable grounds existed to believe that an offense had been committed, and that the person against whom the complaint was made committed it. If he believed that reasonable grounds existed he was authorized to issue a warrant for the

arrest of the accused. The warrant issued was defective in that it did not comply with provisions of Rules Cr.Proc. Sec. 3. Section 44–104. By the provisions of subsection (c) of said section the arresting officer is directed to bring the accused person *"before the magistrate issuing the warrant* or, if he is absent or unable to act, before the nearest or most accessible magistrate in the same county"*. (Emphasis supplied.) It is further provided in Rules Cr.Proc., Sec. 6, Section 44–107, that

> "When the arrest by virtue of a warrant occurs in the county where the alleged offense was committed and where the warrant was issued, the officer making the arrest shall without unnecessary delay *take the person arrested before the magistrate who issued the warrant* or, if that magistrate is absent or unable to act, before the nearest or most accessible magistrate in the same county." (Emphasis supplied.)

In State ex rel. LaPrade v. Grantham, 30 Ariz. 591, 249 P. 758 in considering a comparable statute it was held that the officer executing the warrant should take the defendant before the magistrate *who issued the warrant*. By the provisions of Section 44–108 it is provided that

> "If the defendant be brought before a magistrate in the same county, other than the one who issued the warrant, the complaint on which the warrant was granted, if the defendant insists

upon an examination, shall be sent to such magistrate, and if the complaint can not be procured, a new complaint shall be filed with such magistrate."

We interpret Section 44–104 to 44–107 to mean that it is the duty of the arresting officer to take the defendant to the magistrate who issued the warrant. His only excuse for not so doing is where the magistrate issuing the warrant *is absent or unable* to act. If this situation exists the arrested person should be taken before the nearest or most accessible magistrate in the same county. If the defendant is taken before a magistrate other than the one issuing the warrant, the magistrate before whom he does appear shall have sent to him a copy of the complaint, and if the complaint cannot be procured a new complaint shall be filed with such magistrate. Any informality contained in the warrant of arrest may be remedied. See Section 44–106. The proceedings before the magistrate who issued the warrant constituted no part of the record in the Superior Court, and should not have been docketed in the Superior Court.

When a written complaint is made to a magistrate that an offense has been committed the duty then devolves upon the magistrate to examine the complainant and all witnesses under oath. Sec. 44–102. If it appears from such examination that there are reasonable grounds to believe that an offense has been committed against the person accusing, a warrant

should issue for the arrest of the accused. Sec. 44–103. The warrant issued contemplates the arrest of the person against whom the complaint was made, Sec. 44–103, and that the person accused will be afforded a preliminary examination, Sec. 44–302, unless such examination is waived. Sec. 44–303. By provisions of the latter section it is also provided that regardless of a waiver the magistrate may, on his own motion, conduct a preliminary examination and must conduct one on demand of the County Attorney. The filing of the complaint with the magistrate merely initiates the proceedings which will follow if the accused is arrested, and if arrested it is contemplated that a preliminary examination will be held. The law also contemplates that the complainant and any witnesses examined at the proceedings held to determine whether a warrant of arrest should issue, will be available as witnesses at the preliminary examination, either voluntarily or under subpoena, at which time their competency as witnesses will be gone into as well as the relevancy of any testimony that they might give. The proceedings had to determine whether a warrant should issue do not conclude the proceedings necessarily contemplated and which of necessity will be had in the event the accused is taken into custody under the warrant. The proceedings to be had before the magistrate certainly will not be concluded until after the preliminary examination, and the defendant is discharged or held to answer to the Superior Court. Whether that will conclude the matter is not before us and no pronouncement will now be made thereon. In the instant case it appears that the accused voluntarily appeared and submitted himself to the jurisdiction of the magistrate upon learning of the issuance of the warrant of arrest. There is no merit in the contention of the petitioner, first presented to the magistrate on the motion to release and reasserted here, that the proceedings had been concluded and terminated when the magistrate issued the warrant of arrest.

What, then, was the privilege and duty of the petitioner at the time he was called upon to testify? Ordinarily he would have been entitled to claim immunity against self-incrimination and rely upon the provisions of Article 2, Section 10 of the Arizona Constitution, reading as follows:

"No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense."

The fullness of the immunity granted by this section is somewhat limited by the provisions of Article 2, Section 19 of the Constitution, which reads as follows:

"Any person having knowledge or possession of facts that tend to establish the guilt of any other person or corporation *charged with bribery or illegal rebating,* shall not be excused from giving testimony or producing evidence, when legally called upon to

do so, *on the ground that it may tend to incriminate him under the laws of the state*; but no person shall be prosecuted or subject to any penalty or forfeiture for, or on account of, *any transaction, matter, or thing concerning which he may so testify or produce evidence."* (Emphasis supplied.)

In the recent case of State v. Chitwood, 73 Ariz. 314, 240 P.2d 1202, we interpreted these two constitutional provisions as to the extent of immunity granted when the two sections are construed together. In the latter case it was pointed out that Section 19, Article 2 is self-executing, and that when the charge is bribery or illegal rebating, accusing a person other than the witness, the witness shall not be executed from giving testimony or producing evidence when legally called upon to do so, on the ground that his testimony might tend to incriminate him under the laws of the state. The immunity granted precludes the prosecution for *any* offense of which he is thereafter accused and concerning which he was required to testify, where such testimony constitutes or furnishes a link in the chain of evidence needed to prosecute such witness. State v. Chitwood, supra. This holding is applicable in the instant case to petitioner's claim of privilege on account of the indictment pending against him for perjury. It is pertinent to observe that

"The various sections which declare that evidence obtained upon the examination of a person as a witness can not be received against him in any criminal proceeding, do not forbid such evidence being proved against such person upon any proceedings founded upon a charge of perjury committed in such examination." Sec. 43–107.

In other words, had the questions in the instant inquiry been answered truthfully such answers could not possibly lay the foundation for a new charge of perjury. Truthful answers will give immunity from the previous charge of perjury while untruthful answers will compound the offenses.

We therefore hold that the magistrate was correct in holding that the petitioner's claim of privilege was non-existent as to the two questions put to him and which he refused to answer after having been ordered to answer. His refusal to answer under the circumstances was contumacious.

■■■ In this situation, what was the authority and power of the magistrate? By the provisions of Section 44–2707 it is provided that "Disobedience to a subpoena or a refusal to be sworn or to testify as a witness, may be punished by the court or *magistrate as a contempt. * * *"* The general rule is that the order or warrant of commitment for contempt must name a definite period of imprisonment. 17 C.J. S., Contempt, § 88, subsec. c. (3) page 131.

"Where, however, the contempt consists of an omission to do that which it is in the power of the offender to do,

it is not required that the commitment state the duration of the imprisonment." Id. "So, a witness who refuses to answer a proper question may be committed 'until he may answer'." Id.

In view of the dignity of the office of a magistrate and considering his exclusive power to order the issuance of a warrant of arrest for a person charged with an offense which the magistrate is not empowered to try summarily, coupled with the specific grant of authority to a magistrate to punish for a contempt, Sec. 44–2707, we think that the magistrate had the power to make the coercive order that he did. This order was to compel the witness to testify and to enforce this to keep him in custody until he did. It is pointed out in Wilson v. United States, 3 Cir., 65 F.2d 621, 623,

"* * * that contempt orders are of different kinds and are made to different ends. One kind is purely punitive, and is a sentence imposed for some act committed. Another kind is that here made. It had a coercive purpose. This was to compel appellant to testify and to enforce this, to keep him in custody until he did. These kinds of contempt orders often, as here, overlap.

\* \* \* \* \* \*

"Every sentence so far as punitive must be definite, but so far as coercive it is not indeterminate because limited by the period of noncompliance. If a sentence of imprisonment is imposed as a coercive measure, it ends when there is compliance; but the contumacious party is still subject to a punitive sentence for the contempt which he has committed. It is the latter sentence which must be definite." (Citing cases.)

The contempt order in the instant case was not unlike that specifically authorized in actions before a court. In Section 21–935, A.C.A.1939, it is specifically provided that

"A witness summoned or otherwise in attendance, refusing to give evidence may be committed to the county jail, there to remain until he shall consent to give evidence, or until discharged by law."

Our holding approving the contempt order here under consideration, though not specifically granted by Section 44–2707, we believe under the general law to be inherently incorporated in said section.

Conclusion

By way of summary we conclude:

1. That the asserted claims of privilege not to answer the two questions asked, after the magistrate had ordered that they be answered, were not well founded.

2. That the witness was *not* excused from answering the questions on the ground that his answers thereto might incriminate him under the laws of the state.

3. That the magistrate was empowered and justified under the circumstances in

finding the witness in contempt of court for his failure to answer the questions.

4. That the magistrate was empowered to enter the order of contempt that was made.

5. That the writ of habeas corpus should be discharged.

6. That petitioner having heretofore been admitted to bail is remanded to the custody of the Sheriff under the order of commitment.

7. Any judge of the Superior Court of Pima County is hereby authorized to order the exoneration of petitioner's bail bond when it is affirmatively made to appear that petitioner has been surrendered to the custody of the Sheriff.

It is so ordered.

UDALL, C. J., and STANFORD, PHELPS and DE CONCINI, JJ., concur.