EX PARTE ROBINSON.

1. The act of Congress of March 2d, 1831, entitled "An act declaratory of the law concerning contempts of court," limits the power of the Circuit and District Courts of the United States to three classes of cases: 1st, where there has been misbehavior of a person in the presence of the

courts, or so near thereto as to obstruct the administration of justice; 2d, where there has been misbehavior of any officer of the courts in his official transactions; and 3d, where there has been disobedience or resistance by any officer, party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of the courts.

2. The seventeenth section of the Judiciary Act of 1789, in prescribing fine or imprisonment as the punishment which may be inflicted by the courts of the United States for contempts, operates as a limitation upon the manner in which their power in this respect may be exercised, and is a negation of all other modes of punishment.

8. The power to disbar an attorney can only be exercised where there has been such conduct on the part of the party complained of as shows him to be unfit to be a member of the profession; and before judgment disbarring him can be rendered he should have notice of the grounds of complaint against him and ample opportunity of explanation and defence.

4. Mandamus is the appropriate remedy to restore an attorney disbarred, where the court below has exceeded its jurisdiction in the matter.

On petition by J. S. Robinson, an attorney at law, for mandamus to the judge of the District Court for the Western District of Arkansas, the case being thus:

On the 16th of July, 1873, the grand jury of the Western District of Arkansas reported to the District Court of the United States for the district, then in session at Fort Smith, that in a case in which a certain Nash was a party, they had made every effort in their power to have a witness by the name of Silas Stephenson summoned to appear before them; that for this purpose a subpœna for him had been placed the day previous in the hands of a deputy marshal by the name of Sheldon, for service; that the deputy marshal, on the same day, went to the town of Van Buren, as he said, to make the service; that after he had left the said town, the witness was seen on the streets at Fort Smith, and the subpœna was on that morning returned unserved; that they had learned from evidence before them that the witness knew that a subpœna was issued for him, and had for that reason come to Fort Smith, "but," continued the report, "after seeing the attorney, J. S. Robinson, in the Nash case, very suddenly absented himself." The jury therefore prayed the court to issue an order that the witness, Stephenson, be brought before them.

Upon this report, without other complaint, the court ordered that Sheldon, the deputy marshal, Stephenson, the witness, and Robinson, the attorney, " show cause why they should not be punished as for a contempt."

Two days afterwards, on the 18th of July, the petitioner filed the response of the deputy marshal to the order. The judge then reminded the petitioner that there was also a rule against him, to which he replied: " Yes, sir; I know it, and I am here to respond. I don't know what there is for me to answer. It," referring to the report of the grand jury, " says I saw Silas Stephenson. I do not know what the grand jury has to do with my private business in my law office," and was proceeding to reflect upon the action of the grand jury, when the judge said: " You must answer in writing, Mr. Robinson;" to which the petitioner replied, " The rule itself does not require me to respond in writing." Upon this the judge said, turning to the clerk: " It should have done so; you will amend the order if it does not, Mr. Clerk." The petitioner declined to answer the rule until it was amended. The judge then said: " Well, I will make the order for you to respond in writing now. Mr. Clerk, you will enter an order requiring Mr. Robinson to answer the rule in writing." Upon which the petitioner said: " I shall answer nothing;" and thereupon immediately, without time for another word, the judge ordered the clerk to strike the petitioner's name from the roll of attorneys, and the marshal to remove him from the bar.

This account of the language used by the petitioner and the judge is taken from the latter's response to the alternative writ issued by this court as hereinafter mentioned. The judge states in the same response that the tone and manner of the petitioner were angry, disrespectful, and defiant; and that regarding the words " I shall answer nothing," and the tone in which they were uttered as in themselves grossly and intentionally disrespectful, and as an expression of an intention to disobey and treat with contempt an order of the court; and believing that the petitioner intended to intimidate him in the discharge of his duties,—he felt it due to

himself and his office to inflict summary and severe punishment upon the petitioner.

The order of the court disbarring the petitioner, made at the time, and entered in the minutes of the court kept by the clerk, was declared by the judge to be erroneous in form, and afterwards, on the 28th of July, a more formal order was entered *nunc pro tunc.* This latter order recited the report of the grand jury mentioned above, and the rule to show cause issued thereon why the parties should not be punished as for a contempt, amended from the original order by the insertion of the words, "forthwith in writing and under oath;" and that the petitioner having notice at the time that he was required to respond to the rule, "in a grossly contemptuous, contumacious, and defiant manner," in open court, refused to respond in writing; and then proceeded to decree that, for his contempt committed in open court, as well as for his contempt committed in refusing to respond to the rule, the license of the petitioner as an attorney and counsellor at law and solicitor in chancery be vacated; that the petitioner be disbarred from further practice in the court, and that his name be stricken from the roll of attorneys, counsellors, and solicitors of the court.

Before this amended order was entered, the petitioner, through counsel, filed a motion to vacate the judgment disbarring him, based upon different grounds, which were specified. After its entry a motion to set aside the order as amended was made, in which the petitioner adopted the grounds of the original motion and added others. The substance of the more important of these was, that no charges had been previously preferred in writing and filed against him; that he had had no notice of any charges; that the report of the grand jury contained no charge which he could be required to answer; that no rule had been served upon him to show cause why he should not be disbarred; that he had had no trial previous to being disbarred, and had been denied the right of being heard in his defence; and that the court had no jurisdiction under the circumstances to render the judgment disbarring him.

He also set up among the grounds upon which he would rely, that the sentence he uttered, "I shall answer nothing," was incomplete, and that he was prevented from finishing it by the action of the judge in interrupting him with the judgment disbarring him; that the sentence completed would have been, "I shall answer nothing until the order to answer the rule in writing shall be served upon me."

He also disclaimed any intention to commit a contempt of the court, or to act in defiance of its orders or authority at the time, and averred that he was not conscious of the conduct attributed to him towards the court. This statement was verified by his oath; but the motion was denied.

The petitioner then applied to this court for the present mandamus; a mandamus upon the judge to vacate the order disbarring him and to restore him to the roll of attorneys and counsellors. In his petition, which was verified, he referred to the proceedings of the court below, the record of which was on file in this court, on an appeal taken from the judgment of that court; and stated that in the interview with the witness Stephenson which the grand jury mentioned, there was no allusion made to the Nash case or to the grand jury, but that the consultation then had with the witness related to a totally different matter.

Upon filing the petition, the court ordered that a rule issue to the judge of the District Court,* requiring him to show cause on or before the 10th day of April, A.D. 1874, why a writ of mandamus should not issue to him directing him to revoke his order of July 28th, 1873, disbarring the petitioner, and to restore him to the roll of attorneys and counsellors practicing in the said court.

The rule was served personally upon the judge in March, and in April following he filed his answer. To the answer the counsel for the petitioner demurred and moved, on the papers, for a peremptory mandamus.

The seventeenth section of the Judiciary Act of 1789 pro-

---

* The District Court for the Western District of Arkansas is possessed of Circuit Court powers and jurisdiction, 9 Stat. at Large, 595.

vides that all the courts of the United States "shall have power . . . to punish by fine or imprisonment, at the discretion of said courts, all contempts of authority in any cause or hearing before the same."*

The act of March 2d, 1831, entitled "An act declaratory of the law concerning contempts of court,"† provides, in its first section:

"That the power of the several courts of the United States to issue attachments, and inflict summary punishment for contempts of court, shall not be construed to extend to any cases, except the misbehavior of any person or persons in the presence of the said courts, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of the said courts in their official transactions, and the disobedience or resistance by any officer of the said courts, party, juror, witness, or any other person or persons, to any lawful writ, process, order, rule, decree, or command of the said courts."

*Messrs. Durant and Hornor, for the petitioner. No opposing counsel.*

Mr. Justice FIELD, after stating the facts of the case, delivered the opinion of the court, as follows:

The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power. But the power has been limited and defined by the act of Congress of March 2d, 1831.‡ The act, in terms, applies to all courts; whether it can be held to limit the authority of the Supreme Court, which derives its existence and powers from the Constitution, may perhaps be a matter of doubt. But that it applies to the Circuit and

---

* 1 Stat. at Large, 83.          † 4 Id. 487.          ‡ Ib.

District Courts there can be no question. These courts were created by act of Congress. Their powers and duties depend upon the act calling them into existence, or subsequent acts extending or limiting their jurisdiction. The act of 1831 is, therefore, to them the law specifying the cases in which summary punishment for contempts may be inflicted. It limits the power of these courts in this respect to three classes of cases: 1st, where there has been misbehavior of a person in the presence of the courts, or so near thereto as to obstruct the administration of justice; 2d, where there has been misbehavior of any officer of the courts in his official transactions; and, 3d, where there has been disobedience or resistance by any officer, party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of the courts. As thus seen the power of these courts in the punishments of contempts can only be exercised to insure order and decorum in their presence, to secure faithfulness on the part of their officers in their official transactions, and to enforce obedience to their lawful orders, judgments, and processes.

If we now test the report of the grand jury by this statute, we find nothing in it which justified any proceeding whatever as for a contempt on the part of the court below against Robinson. No act of his is mentioned which could constitute within the statute a contempt either of the court or of its judge. The allegation that the witness Stephenson, after seeing Robinson, had suddenly absented himself, amounted to nothing more than an insinuation that possibly he may have been advised to that course by Robinson. There was no averment of any fact which the court could notice or the attorney was bound to explain.

Whatever contempt was committed by the petitioner consisted in the tone and manner in which his language to the court was uttered. On this hearing we are bound to take the statements in that respect of the judge embodied in his order as true, for the question before us is not whether the court erred, but whether it had any jurisdiction to disbar the petitioner for the alleged contempt.

The law happily prescribes the punishment which the court can impose for contempts. The seventeenth section of the Judiciary Act of 1789 declares that the court shall have power to punish contempts of their authority in any cause or hearing before them, by fine or imprisonment, at their discretion. The enactment is a limitation upon the manner in which the power shall be exercised, and must be held to be a negation of all other modes of punishment. The judgment of the court disbarring the petitioner, treated as a punishment for a contempt, was, therefore, unauthorized and void.

The power to disbar an attorney proceeds upon very different grounds. This power is possessed by all courts which have authority to admit attorneys to practice. But the power can only be exercised where there has been such conduct on the part of the parties complained of as shows them to be unfit to be members of the profession. Parties are admitted to the profession only upon satisfactory evidence that they possess fair private character and sufficient legal learning to conduct causes in court for suitors. The order of admission is the judgment of the court that they possess the requisite qualifications both in character and learning. They become by such admission officers of the court, and, as said in *Ex parte Garland*,* " they hold their office during good behavior, and can only be deprived of it for misconduct ascertained and declared by the judgment of the court after opportunity to be heard has been afforded." Before a judgment disbarring an attorney is rendered he should have notice of the grounds of complaint against him and ample opportunity of explanation and defence. This is a rule of natural justice, and should be equally followed when proceedings are taken to deprive him of his right to practice his profession, as when they are taken to reach his real or personal property. And such has been the general, if not the uniform, practice of the courts of this country and of England. There may be cases undoubtedly of such gross and outrageous conduct in open court on the part of the

* 4 Wallace, 378.

attorney, as to justify very summary proceedings for his suspension or removal from office; but even then he should be heard before he is condemned.* The principle that there must be citation before hearing, and hearing or opportunity of being heard before judgment, is essential to the security of all private rights. Without its observance no one would be safe from oppression wherever power may be lodged.

That mandamus is the appropriate remedy in a case like this to restore an attorney disbarred, where the court below has exceeded its jurisdiction in the matter, was decided in *Ex parte Bradley*, reported in the 7th of Wallace. It would serve no useful purpose to repeat the reasons by which this conclusion was reached, as they are fully and clearly stated in that case, and are entirely satisfactory.

A peremptory mandamus must issue, requiring the judge of the court below to vacate the order disbarring the petitioner, and to restore him to his office.

MANDAMUS AWARDED.

Mr. Justice MILLER dissented.

APPEAL from the District Court for the Western District of Arkansas.

---

* *Ex parte* Heyfron, 7 Howard's Mississippi Reports, 127; People *v.* Turner, 1 California, 148; Fletcher *v.* Daingerfield, 20 Id. 430; Beene *v.* State, 22 Arkansas, 157; Ex parte Bradley, 7 Wallace, 364; Bradley *v.* Fisher, 13 Id. 354.