### WILSON v. UNITED STATES.
### No. 4995.

Circuit Court of Appeals, Third Circuit.
June 2, 1933.

McVICAR, District Judge, dissenting.

A. W. W. Woodcock, of Baltimore, Md., and Will H. Krause, of Washington, D. C. (Leonard E. Wales, of Wilmington, Del., of counsel), for appellant.

Clarence A. Southerland, of Wilmington, Del., for the United States.

Before DAVIS, Circuit Judge, and DICKINSON and McVICAR, District Judges.

### The Fact and Record Situation.

**DICKINSON, District Judge.**

There is danger that the merits of this cause be lost in a mere procedural mix-up. The record on its face leaves open to us only a choice between dismissing an appeal, which clearly does not lie, or affirming a judgment which just as clearly should be affirmed, according as it is determined whether the order now in question is merely the carrying into execution of a former order, which was affirmed by this court [59 F.(2d) 390], or whether it is a new order refusing to relieve the appellant from the contempt order before made.

The real trouble seems to be that counsel has misapprehended what the District Court did and is attempting to take an appeal from an order which the court did not make, and which we cannot assume the court would have made, but which counsel assumes the court to have made. This calls upon us to demonstrate the obvious, a procedure which is always lengthy, and entails an otherwise unnecessarily long fact statement because we must go back to the beginning of what has led to the present controversy.

A charge was made and indictment found against a defendant for a violation of the National Prohibition Act (27 USCA § 1 et seq.). A search was made of defendant's premises followed by a seizure. The evidence thus procured the defendant anticipated would be offered in evidence in support of the indictment. A motion was accordingly made to suppress this evidence as unlawfully obtained. At the hearing on this motion the appellant was called as a witness to support by his testimony the lawfulness of the seizure made. On cross-examination he was asked a question which he refused to answer on the familiar ground that he could not answer without divulging the source of confidential information given him in aid of crime suppression, information which he was under a pledge not to disclose, and which his superiors had ordered him not to divulge. The trial judge, however, directed him to answer, and upon his refusal committed him "until he should purge himself of the contempt." From this order of commitment he took an appeal to this court, by which the order was affirmed, and the cause remitted to the District Court accompanied by the usual mandate. In the meantime the appellant had been released on bail, conditioned that he would surrender himself, to abide the judgment of the court.

Let us pause here to get into our minds the then situation. The appellant was bound to surrender himself to the custody of the marshal, whose authority to hold him was the affirmed order of commitment. The prosecution in the original case, anticipating that the search evidence would be suppressed and that without it no conviction could be had upon trial of the indictment, decided to submit to

an order suppressing the evidence, and to ask the leave of the court to enter a nolle prosequi to the indictment.

Let us pause again to get in mind a course of procedure which might have been followed. The hearing upon the motion to quash would have been resumed; the appellant would have taken the stand ready to purge himself of contempt by answering the question he was directed to answer. The United States attorney might then have informed the court that in the public interest the disclosure asked for should not be made; that the United States withdrew the appellant as a witness, consented to all the testimony given by him being struck out, submitted to an order suppressing it, asked for leave to enter a nolle prosequi to the indictment, and that the appellant be permitted to purge himself of the contempt. In view of what the court did, we may assume that the court would have entered a judgment that the evidence be suppressed and would have given leave to enter a nolle prosequi to the indictment. With these things done, the search hearing would have been ended and the indictment disposed of, so that nothing would remain except the entry of an order on the appellant's motion that he be permitted to purge himself of contempt and for relief from his commitment. When the appellant had made his statement in furtherance of his offer to purge himself of contempt, the court would then have made such order as its judgment dictated. This would have been a second and fresh order from which the present appellant would have had the right of appeal. Although the proceedings did not take this formal shape, the appellant contends that the equivalent of this was done. All the parties were voluntarily before the court. The United States submitted to an order suppressing the evidence and such order was in form entered. The United States further asked leave to enter a nolle prosequi to the indictment. This leave was granted and a nolle prosequi formally entered. This, as before stated, disposed of the hearing proceedings and the indictment. It did not, however, dispose of the contempt proceedings. The appellant had appeared and in discharge of his bail surrendered himself to the custody of the marshal. As before stated, the marshal then held him by the authority of the first affirmed order of commitment. No formal application for the discharge of the appellant was made, but the court and all concerned treated the presence of the appellant and what had transpired, including statements made at Bar by counsel, as

the appellant's application for leave to purge himself of contempt.

The situation thus far is clear enough, but just here the mix-up occurred. What seems to have happened is that counsel looked upon the statement he had made as the purgation required of the appellant. It would seem that the court did not so regard it, and offered to the appellant the opportunity to purge himself as counsel had indicated he was willing to do. Counsel for ought we know, misapprehending what was in the mind of the court, and anticipating that a disclosure which the United States did not wish in the public interests to be made, would be made, declined for the appellant to purge himself, and the order now appealed from was entered. It in form recites the proceedings before had and commits the appellant "until he purge himself of the contempt."

### Discussion.

■ We may premise that contempt orders are of different kinds and are made to different ends. One kind is purely punitive, and is a sentence imposed for some act committed. Another kind is that here made. It had a coercive purpose. This was to compel appellant to testify and to enforce this, to keep him in custody until he did. These kinds of contempt orders often, as here, overlap. The order is, as this one was, coercive, but the appellant could not escape its consequences by a mere compliance with what the order required him to do. When he so complied he had not atoned for the contempt of which he had been guilty in his refusal. There would, for illustration, be nothing illogical or inconsistent in a court entering an order requiring a party, subject to it, to do something and committing him until he complied and, upon his compliance, fining him for the contempt of which he had been guilty but relieving him of further imprisonment. Every sentence so far as punitive must be definite, but so far as coercive it is not indeterminate because limited by the period of noncompliance. If a sentence of imprisonment is imposed as a coercive measure, it ends when there is compliance; but the contumacious party is still subject to a punitive sentence for the contempt which he has committed. It is the latter sentence which must be definite. Bessette v. Conkey, 194 U. S. 329, 24 S. Ct. 665, 48 L. Ed. 997; Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874.

■ Applied to the facts of this case, the first sentence having been proper, the appel-

lant was bound to comply. It was his right to be given an opportunity to comply and to purge himself of the contempt of which he had been guilty. He thus held in his own hand the key to unlock the door of his prison. As long as he refused to use it, the door would remain locked. If one who has been committed for a contempt "until he purge himself" refuses to seek release, no further order of commitment is in order. If, however, he offers to atone and does so, then a new order is called for, which is a judgment upon his application for relief. It is thus seen how narrow and almost purely technical the question now presented is. If the order sought to be reviewed is nothing more than the execution of the former order affirmed by this court, clearly it is not subject to appeal, and the motion to dismiss should be allowed. Stewart v. Salamon, 97 U. S. 361, 24 L. Ed. 1044; Humphrey v. Baker, 103 U. S. 736, 26 L. Ed. 456; Aspen Min. & Smelting Co. v. Billings, 150 U. S. 37, 14 S. Ct. 4, 37 L. Ed. 986.

▮▮ Whether it is only this depends upon whether the appellant offered to purge himself of the contempt, and upon doing so to be released from custody, or whether he simply surrendered himself in discharge of his bail. The liberty of no one should be dependent upon as narrow and technical a question as this. This appeal, as we have before stated, grows out of a misunderstanding by counsel of the action of the court. Counsel had given a statement of the changed attitude of the appellant. We have no doubt that this was a handsome specimen of the amende honorable. It was, however, merely the statement of counsel. The court was clearly justified and was following the usual practice in giving the appellant the opportunity to make his atonement in person. This he refused to do. We thus have presented the simple situation of a witness directed to answer a question, his commitment until he had purged himself of the contempt, and his refusal to so purge himself. Such a situation in itself supplies its own answer to any question which arises out of it. The anticipations or misapprehensions of counsel respecting the ruling the court might make upon an application for relief cannot justify a refusal to make the application. Counsel could confidently assume that the court in dealing with the application would consider everything which bore upon the conduct of the appellant. Among these are that the question at law underlying the disclosure asked to be made, might have been fairly regarded as not fully settled; that the question could only be raised by a refusal to make the disclosure; that the appellant had no personal interest to be served but was merely obeying orders, and more especially that the general rule of the courts is not to require a disclosure and it is only done when necessary to the protection of the innocent or to the judgment to be reached by the court. The rule not to compel a disclosure is a rule of policy which is followed unless it conflicts with a rule of justice. The situation is now wholly changed from what it was. Then the compulsion of disclosure was needful to reach the ends of justice, and the rule of policy was required to give way. Now there are no ends of justice to be reached, and the policy of the law is not to force a disclosure. These and all matters bearing upon the question of a meet punishment of the appellant for the contempt of which he had been guilty, would have been given due weight by the court. Had, for illustration, the appellant made atonement for his former contempt, the court might well have ruled that it would not require the original question to be answered because there was now no need for an answer, but the former refusal was none the less a contempt which could not be overlooked, and imposed a definite sentence of a reasonable fine, or if the court thought the former refusal was really and in fact contumacious, an adequate sentence of imprisonment.

In form at least the appellant refused to ask for relief and left to the court below no alternative but to commit him until he made atonement.

The assignments of error are overruled, and the order of commitment affirmed, with leave to appellant to ask for relief.

McVICAR, District Judge, would reverse the order appealed from for the reason that it is impossible for appellant to purge himself of the contempt for which he is directed to be committed.