**UNITED STATES of America,**
Appellee,

v.

**Emanuel BROWN, Defendant-Appellant.**
**No. 388, Docket 24626.**

United States Court of Appeals
Second Circuit.

Argued May 6-7, 1957.

Decided July 10, 1957.

Myron L. Shapiro, New York City, for defendant-appellant.

Paul W. Williams, U. S. Atty., Southern Dist. of New York, New York City (Herbert M. Wachtell, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before MEDINA, HINCKS and LUMBARD, Circuit Judges.

LUMBARD, Circuit Judge.

Emanuel Brown appeals from a judgment of conviction and a sentence of 15

**334**

months imprisonment for refusing to answer questions before a grand jury which was investigating alleged violations of the Motor Carrier Act, 49 U.S.C.A. §§ 301–327 despite assurances that under the applicable provisions of law, 49 U.S.C.A. §§ 305(d), 46, he would be immune from prosecution regarding any matters concerning which he would be required to testify.

As Brown questions the propriety of the procedure resulting in the judgment, as well as the existence and extent of the immunity conferred and the severity of the sentence imposed, we first consider the sequence of events before the grand jury and the court.

On Friday, April 5, 1957, Brown was called before a grand jury which he attended pursuant to the command of a subpoena. This grand jury was conducting an investigation into an alleged violation of the Motor Carrier Act. Although advised by the Assistant United States Attorney that he could not be prosecuted on account of any matter concerning which he would testify under the Motor Carrier Act, Brown refused to answer these six questions:

"Q. Mr. Brown, are you associated with Young Tempo, Incorporated?

"Q. Mr. Brown, does Young Tempo, Incorporated, use a trucking company known as the T and R Cutting Company or as the T and R Trucking Company?

"Q. Mr. Brown, who do you know to be the owner or owners or the principal in interest or principals in interest of the T and R Cutting or the T and R Trucking Company?

"Q. Mr. Brown are you associated with the Acme Dress Company in Midvale, New Jersey?

"Q. Mr. Brown, does the T and R Trucking Company provide trucking services between Young Tempo, Incorporated, in New York City and the Acme Dress Company in Midvale, New Jersey?

"Q. Mr. Brown, do you know if the T and R Trucking Company or the T and R Cutting Company has applied for or obtained a permit from the Interstate Commerce Commission to operate as a contract trucker between New York, New York, and Midvale, New Jersey?"

Thereupon the grand jury attended before Judge Levet to seek his aid and assistance in a direction to Brown, who was present with his counsel, that he answer the questions. At the suggestion of the government the courtroom was cleared of all but the interested parties and court personnel, no objection being then made to this procedure.

At this first hearing, government counsel stated that Brown's testimony was sought because Young Tempo, Inc., a New York City dress manufacturing firm in which Brown was a principal, had used the T and R Trucking Company or the T and R Cutting Company for trucking. The government stated that its inquiry was directed to the true ownership of these trucking companies and their operation between New York and New Jersey, contrary to law, without a permit from the Interstate Commerce Commission.

Although Brown's counsel had been advised eleven days before, on March 25, that Brown was to be questioned on these matters under the Motor Carrier Act, he asked for a "reasonable adjournment" and notice of the specifications or charges in order to prepare for the hearing.

When the judge asked counsel what proof he might wish to present, counsel replied that he would like to look into the question of whether he could compel production of the minutes of prior grand jury investigations in which Brown had pleaded the Fifth Amendment.[1]

Brown's counsel asserted the investigation was being used "as a means of circumventing the exercise by Brown of

---

1. These investigations related to the Victor Reisel acid blinding case, and to racketeering in the garment trucking industry.

his Fifth Amendment privilege to refuse to testify before the other grand jury," which government counsel denied.[2] There followed a colloquy regarding the existence and scope of the immunity available to a grand jury witness under 49 U.S.C.A. § 305(d) and § 46, which we treat as the principal questions before us.

The grand jury reporter was then called as a witness and testified that Brown refused before the grand jury to answer each of the six questions on the ground that by answering he might tend to incriminate himself. A recess was taken until Monday afternoon, April 8. On Monday, Brown and his counsel again appeared before Judge Levet. After the judge had indicated that he would instruct Brown to answer because the statute gave him full immunity, Brown's counsel asked for an adjournment of a day or so for further discussion with his client. The judge refused to allow more than half an hour and directed that the questions be answered before the grand jury at 2:45 p. m. After Brown's reappearance the grand jury returned to the courtroom at 3:15 p. m. and reported Brown's continued refusal to answer. The government then asked that the court again put the questions to Brown and suggested that Brown's persistent refusal in the physical presence of the court would justify his being summarily held in contempt under Rule 42(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A.

Brown, who had already been sworn before the grand jury, was called to the stand by the district judge. His counsel objected to this procedure, apparently on the ground that Brown was now a defendant in a criminal contempt case, but this was overruled. The questions were again put by the court and Brown refused to answer each question on the ground that it might tend to incriminate him. After Brown's counsel again re-peated his arguments why Brown should not be compelled to answer, the Court adjudged Brown to be in contempt, under 18 U.S.C.A. § 401, and sentenced him to be confined for one year and three months.

1. *Immunity under the Motor Carrier Act.*

■ We start with the general proposition that where Congress has granted immunity from prosecution coextensive with the protection of the Fifth Amendment, the witness may not refuse to testify on the claim that he may incriminate himself. Brown v. Walker, 1896, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 decided that with respect to the same § 46 here in question, then 27 Stat. 448, Act of February 11, 1893. Ullmann v. United States, 1956, 350 U.S. 422, 76 S. Ct. 497, 100 L.Ed. 511 is the latest affirmation of this principle with respect to the Immunity Act of 1954. 18 U.S. C.A. § 3486.

■ Brown claims, however, that Congress did not intend to make the immunity provisions of § 46 of the Interstate Commerce Act apply to grand jury investigations of alleged offenses under the Motor Carrier Act. We do not agree. We find that a reading of the applicable sections of the Interstate Commerce Act shows that Congress intended that witnesses testifying in a grand jury inquiry under those sections having to do with motor carriers would receive immunity just as if they were testifying in a grand jury inquiry under Title I.

The second clause of 49 U.S.C.A. § 305 (d) affords immunity in grand jury proceedings under the Motor Carrier provisions, Chapter 8, by incorporating, the "rights, privileges and immunities" and "the duties, liabilities, and penalties" of witnesses as stated in § 46 of Title I.

Section 305(d)[3] in its pertinent words provides:

---

2. Brown's counsel also stated that the Assistant United States Attorney had threated Brown with indictment under the revenue laws. There is nothing in the record to substantiate this statement.

3. Section 305(d) reads: "So far as may be necessary for the purposes of this chapter, the Commission and the members and examiners thereof and joint boards shall have the same power to ad-

"* * * and any person subpoenaed or testifying in connection with any matter under investigation under this chapter shall have the same rights, privileges, and immunities and be subject to the same duties, liabilities, and penalties as though such matter arose under chapter 1 of this title, * * *" Section 46 [4] provides in part:

"No person shall be excused from attending and testifying * * * in any cause or proceeding, criminal or otherwise, based upon or growing out of any alleged violation of chapter 1 of this title on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him, may tend to criminate him or subject him to a penalty or forfeiture. But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify * * * in any such case or proceeding: * * *"

minister oaths, and require by subpena the attendance and testimony of witnesses and the production of books, papers, tariffs, contracts, agreements, and documents, and to take testimony by deposition, relating to any matter under investigation, as the Commission has in a matter arising under chapter 1 of this title; and any person subpenaed or testifying in connection with any matter under investigation under this chapter shall have the same rights, privileges, and immunities and be subject to the same duties, liabilities, and penalties as though such matter arose under chapter 1 of this title, unless otherwise provided in this chapter."

4. The full text of § 46 is: "No person shall be excused from attending and testifying or from producing books, papers, tariffs, contracts, agreements, and documents before the Interstate Commerce Commission, or in obedience to the subpena of the Commission, whether such subpena be signed or issued by one or more commissioners, or in any cause or proceeding, criminal or otherwise, based upon or growing out of any alleged violation of chapter 1 of this title on the

It seems to us that the natural meaning of the reference in § 305(d) to § 46 is that whatever is within the scope of the latter is to be incorporated into the former. Hence the immunity applies to grand jury investigations under Chapter 8, the Motor Carrier Act, just as it does to such investigations under Chapter 1.

Brown's argument is that since the first clause of § 305(d) grants investigatory power only to the Commission, for "any matter under investigation," the reference in the immunity clause of § 305(d) to "any matter under investigation under this chapter" should be read *in pari materia* with the empowering clause to mean "under investigation under this chapter *by the Commission.*" Consequently, § 305(d) is limited to hearings before the Commission and does not apply to matters before grand juries and courts. We do not agree. It seems clear that if § 46 applies at all it applies equally to "any cause or proceeding, criminal or otherwise." There is no qualifying language. On the contrary, § 305(d) in plain words has made the

ground or for the reason that the testimony or evidence, documentary or otherwise, required of him, may tend to criminate him or subject him to a penalty or forfeiture. But no person shall be prosecuted or subject to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify, or produce evidence, documentary or otherwise, before said commission, or in obedience to its subpoena, or the subpoena of either of them, or in any such case or proceeding; Provided, That no person so testifying shall be exempt from prosecution and punishment for perjury committed in so testifying. Any person who shall neglect or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, tariffs, contracts, agreements, and documents, if in his power to do so, in obedience to the subpoena or lawful requirement of the commission shall be guilty of an offense and upon conviction thereof by a court of competent jurisdiction shall be punished by fine not less than $100 nor more than $5,000, or by imprisonment for not more than one year or by both such fine and imprisonment."

immunity applicable to "*any* matter under investigation under this chapter." [Emphasis added.] This is not limited to any matter under investigation before the Commission. Furthermore, Chapter 8 provides in § 322 for criminal prosecutions and penalties for the enforcement of its various provisions, 49 U.S.C.A. §§ 301–327. Thus the power to compel testimony is as natural to and as much wedded to Chapter 8 as it is to Chapter 1. Moreover, we are unable to see anything peculiar to motor carrier investigations which would justify a construction of the immunity provision narrower than that applicable to investigations relating to the other forms of transportation under the Interstate Commerce Act.

The language is clear, the construction for which the government contends is practical and sensible, and there is no reason why we should not construe the language according to its plain meaning.[5] United States v. Missouri Pacific R. Co., 1929, 278 U.S. 269, 278, 49 S.Ct. 133, 73 L.Ed. 322.

Brown's second argument is that even if § 305(d) incorporates the immunity granted by § 46, this is inadequate protection. He claims that it does not provide immunity for offenses not related to violations of the Motor Carrier Act because the immunity under § 305(d) can be granted only "so far as may be necessary for the purposes of this chapter."

We do not believe the immunity is so limited. The statutory language does not imply that immunity is to be limited to offenses under the Motor Carrier Act; immunity for an offense under the revenue laws may be equally neces-

sary "for the purposes of this chapter," precisely for the reasons suggested in this case. The scope of immunity must be as broad as the scope of incrimination, see Counselman v. Hitchcock, 1892, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110, and we see no reason to think that any court will construe it more narrowly. Thus where Congress has said that the witness "shall not be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may testify, * * * " Congress has said that the witness cannot and will not incriminate himself by answering questions. This covers, and is meant to cover, everything which may be testified to, "any transaction, matter or thing." United States v. Andolschek, 2 Cir., 1944, 142 F.2d 503, 506.

Should proceedings ever be brought against Brown regarding any transaction, matter or thing concerning which he testifies, he has a complete defense at that time. The immunity attaches with the testimony. United States v. Monia, 1943, 317 U.S. 424, 63 S.Ct. 409, 87 L.Ed. 376; United States v. Andolschek, supra. Even though the witness is already under indictment he must testify as he thereby is put beyond the reach of further prosecution. That much was decided by Judge Learned Hand in 1910 in In re Kittle, C.C., 180 F. 946, and this principle has never been questioned in any reported case. From this it follows that Brown has no right to remain silent because of some fancied prosecution which may never happen. It is enough for him to know that he is fully protected. The government has been em-

---

5. Congress has made grants of immunity applicable to grand jury proceedings under numerous statutes both before and after enactment of the Motor Carrier Act in 1935, among others: (1893) Interstate Commerce Act, now 49 U.S.C.A. § 46; (1903) Anti-Trust Laws, 15 U.S.C.A. § 32; (1916) Shipping Act, 46 U.S.C.A. § 827; (1919) National Prohibition Act, 41 Stat. 317; (1934) Securities and Exchange Act, 15 U.S.C.A. § 78u(d); (1934) Federal Communications Act, 47 U.S.C.A. § 409(e); (1935) Industrial Al- cohol Act, 26 U.S.C.A. § 5315; (1935) Internal Revenue Act, 49 Stat. 875, now § 5315, Internal Revenue Code of 1954, 26 U.S.C.A. § 5315; (1937) Bituminous Coal Act, § 8(b), 50 Stat. 87; (1938) Civil Aeronautics Act, 49 U.S.C.A. § 644 (i); (1940) Water Carriers Act, 49 U.S. C.A. § 916(a); Freight Forwarders Act, 49 U.S.C.A. § 1017(a); (1954) Immunity Act of 1954, 18 U.S.C.A. § 3486(c); and (1956) Narcotics Control Act, 18 U.S. C.A. § 1406.

powered by Congress to pay the price of immunity for Brown's testimony. Should the need ever arise the courts will see to it that the bargain is fully kept.

Thus is follows that what may have happened when Brown testified before other grand juries is irrelevant in the light of the fact that he would receive immunity when he testified in the investigation under the Motor Carrier Act, and the district judge correctly refused to consider what Brown may have testified to previously or what may have transpired before those grand juries.

2. *The Validity of the Procedure.*

Brown further complains that in the District Court proceedings he was deprived of his rights to notice and a hearing under Rule 42(b) of the Federal Rules of Criminal Procedure, 18 U.S. C.A., and that the fundamental safeguards due him in a criminal proceeding were not accorded. We disagree.

In cases where the witness is instructed by the Court and he refuses in the presence of the Court to comply with its order, we look to subsection (a) of Rule 42 which reads:

> "(a) Summary Disposition. A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record."

█ The Court having properly ruled that Brown must answer the questions, it was in order for the Court to require Brown to return to the grand jury and answer. When Brown persisted in his refusal to answer and repeated that refusal before the Court, Brown had disobeyed a lawful order of the Court, 18 U.S.C.A. § 401(3) and as his disobedience and contempt of the Court's order had taken place in the "actual presence" of the Court, the judge was empowered

under Rule 42(a) forthwith and summarily to punish Brown.

Brown and his counsel were afforded every reasonable opportunity to be heard regarding Brown's claim of privilege and the Court's proposed action thereon. While the issue had some novel aspects under the Interstate Commerce Act, counsel was advised of them well in advance of the first hearing on April 5 when the questions were first put to Brown. At that time and thereafter on April 8 the judge afforded Brown and his counsel full opportunity to be heard. The procedure here followed is almost identical with that which was before us in United States v. Gordon, 2 Cir., 1956, 236 F.2d 916; United States v. Courtney, 2 Cir., 1956, 236 F.2d 921; United States v. Curcio, 2 Cir., 1956, 234 F.2d 470, reversed by the Supreme Court on other grounds, 1957, 77 S.Ct. 1145; United States v. Trock, 2 Cir., 1956, 232 F.2d 839, reversed on other grounds 1956, 351 U.S. 976, 76 S.Ct. 1048, 100 L. Ed. 1493. See also Carlson v. United States, 1 Cir., 1954, 209 F.2d 209.

The procedure which was followed here fully accorded to Brown all his rights under § 42(a): he was given ample notice, he was represented by counsel and his counsel was fully heard.

There is good reason for providing for such summary procedure and for applying it to contumacious grand jury witnesses. The public interest requires that grand juries should suffer a minimum of delay in their investigations. Each delay of such an inquiry, however brief, multiplies the difficulties in getting facts, locating witnesses and finding the truth. Law enforcement faces enough difficulties without the added hazard of the unnecessary delays due to protracted hearings and adjournments which are not necessary. The district judge acted promptly and with commendable diligence. At the same time he afforded Brown and his counsel a full and adequate hearing at which all the points raised in this court, save one, were discussed.

█ The one point which was not raised below was the secrecy of the pro-

ceedings. Not having objected to the clearing of the courtroom at the time, we do not see how Brown can be heard to complain now. So long as the witness' counsel was there to represent him and to make protest Brown has no standing to complain now. In re Oliver, 1948, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682, is not in point as there the state judge, who was himself the one-man grand jury, forthwith convicted the petitioner in a secret session without any advance notice and without allowing him any time to consult counsel.

Finally, Brown's contention that he was entitled to the right of a criminal defendant to refuse to answer any questions before the district judge is rejected. In the first place, this hearing before the district judge was, despite Brown's argument to the contrary, merely a proceeding ancillary to the grand jury investigation and not a criminal proceeding. In the second place, preventing the Court from inquiring of the witness whether he is willing to answer questions would frustrate the proper operations of the grand jury, and without affording the witness any protection which is not already accorded him. The Court is merely being advised as to what had already happened before the grand jury. Brown had already made it clear, both to the grand jury and the Court that he refused to answer. Had Brown remained mute and refused to speak at all, the result would have been the same.

■ Brown further complains that a sentence of 15 months constitutes cruel and unusual punishment in violation of the Eighth Amendment, or, in any event, an abuse of the Court's discretion. We find no merit to either of these contentions.

■ There is no statutory maximum which governs the power of the district court judges to sentence for contempts committed in their presence. Therefore unless the punishment offends the prohibition of the Eighth Amendment by reason of its cruel and unusual nature we must affirm the sentence imposed. For failure to produce books subpoenaed by a grand jury it has been held that 18 months imprisonment is not excessive. Lopiparo v. United States, 8 Cir., 1954, 216 F.2d 87, 92, certiorari denied 1955, 348 U.S. 916, 75 S.Ct. 297, 99 L.Ed. 718. We have heretofore sustained sentences up to three and four years where defendants have violated court orders to surrender, United States v. Thompson, 2 Cir., 1954, 214 F.2d 545, certiorari denied 1954, 348 U.S. 841, 75 S.Ct. 48, 99 L.Ed. 663; United States v. Hall, 2 Cir., 1952, 198 F.2d 726, certiorari denied 1953, 345 U.S. 905, 73 S.Ct. 641, 97 L.Ed. 1341; and United States v. Green, 2 Cir., 1957, 241 F.2d 631, certiorari granted 1957, 77 S.Ct. 1057.

That it has long been understood that the district courts have a considerable latitude in contempt sentences is further borne out by such cases as Warring v. Huff, 74 App.D.C. 302, 122 F.2d 641, certiorari denied 1941, 314 U.S. 678, 62 S.Ct. 183, 86 L.Ed. 543, two consecutive sentences of 13 months; Conley v. United States, 8 Cir., 1932, 59 F.2d 929, two years; and Hill v. United States, 1937, 300 U.S. 105, 57 S.Ct. 347, 81 L.Ed. 537, concurrent sentences of a year and a day and two years. In view of these precedents it cannot be said that there was anything cruel or unusual about the sentence of 15 months which was imposed here.

■ Nor was the district court obliged to provide that the contemnor might purge himself. The judge fully considered whether he should so sentence Brown, and for good and sufficient reasons the sentence was unconditional. Indeed, we are not advised that Brown desires to purge himself.

There is no point in inquiring into whether the district judge meant the sentence to be coercive or punitive. The sentence was well within the power of the district court and that is the only question into which we may inquire.

The judgment is affirmed.