UNITED STATES of America,
Appellee,

v.

Frank DE SIMONE, Appellant.

No. 286, Docket 25539.

United States Court of Appeals
Second Circuit.

Argued March 13, 1959.

Decided May 29, 1959.

Abraham S. Robinson, of Robinson, Thebner & McLaughlin, New York City (Emanuel Thebner and Martin J. McLaughlin, of Robinson, Thebner & McLaughlin, New York City, on the brief), for appellant.

William S. Lynch, Special Asst. U. S. Atty., S.D.N.Y., New York City (Arthur H. Christy, U. S. Atty., and George I. Gordon, Kevin Thomas Duffy, and Otis Pratt Pearsall, Asst. U. S. Attys., New York City, on the brief), for appellee.

Before WASHINGTON,* WATERMAN and MOORE, Circuit Judges.

WASHINGTON, Circuit Judge.

This is an appeal from a judgment of criminal contempt entered after a trial pursuant to Fed.R.Crim.P. 42(b), 18 U.S.C.A.,[1] in the United States District Court for the Southern District of New York.

On April 28, 1958, the appellant De Simone, while resident in Los Angeles, California, was served with a Federal Grand Jury subpoena, requiring him to appear on May 7, 1958, to testify before a Grand Jury sitting in the Southern District of New York. Prior to the return date, appellant's lawyer attempted several times to obtain a temporary adjournment, but without success. On the return date, De Simone failed to appear before the Grand Jury. That body thereupon issued a presentment for criminal contempt charging that De Simone "wilfully, deliberately and contumaciously obstructed the process of this Court in failing and refusing to appear before this Grand Jury to answer the proper questions in said proceeding before this Grand Jury." A writ was issued for the appellant's arrest. On May 19, 1958, De Simone voluntarily appeared in New York and surrendered. At the trial the appellant made no attempt to explain his failure to appear on the return date, or his whereabouts between April 28th and his ultimate surrender on May 19th. The appellant was found guilty of contempt and sentenced in the manner described in Part V of this opinion. This appeal followed.

## I.

Appellant's first contention is that the contempt proceeding should have been initiated by an indictment or information pursuant to Fed.R.Crim.P. 7 (a), as in all Federal criminal prosecutions, instead of by a Grand Jury presentment for contempt. But criminal contempts are not considered crimes in the constitutional sense, being governed by Fed.R.Crim.P. 42. Green v. United States, 1958, 356 U.S. 165, 187 note 20, 78 S.Ct. 632, 2 L.Ed.2d 672. Rule 42 does not call for an indictment or information. Under Rule 42(a), summary punishment is allowed for contempt within the actual presence of the court. Other criminal contempts—such as that involved here—are prosecuted upon no-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(a).

1. "Rule 42. Criminal Contempt
 * * * * *

 "(b) Disposition Upon Notice and Hearing. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment."

tice under Rule 42(b). The latter Rule requires that the notice shall "state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such." The Rule further requires that the notice be either oral if given by a judge in open court in the presence of the defendant, or by an order to show cause or an order of arrest if made on application of the United States Attorney or an attorney appointed by the court for that purpose. It is true that there is no specific provision in Rule 42(b) for notice by Grand Jury presentment. But we think appellant received ample actual notice from the presentment and the court proceedings which followed. The presentment stated the essential facts constituting the contempt, and the trial judge set the time and place for hearing with adequate opportunity for the defendant to prepare his defense. There being no prejudice to the defendant, see United States v. United Mine Workers, 1947, 330 U.S. 258, 298, 67 S.Ct. 677, 91 L.Ed. 884, the requirements of Rule 42(b) were adequately met, see United States v. Goldfarb, 2 Cir., 1948, 167 F.2d 735; Carlson v. United States, 1 Cir., 1954, 209 F.2d 209, 218.

## II.

■■■ As the second point of error, the appellant urges that he was improp-erly deprived of a trial by jury. There is, of course, no constitutional right to a trial by jury in criminal contempt cases. See, e. g., Green v. United States, 356 U.S. at pages 183, 186, 78 S.Ct. at page 642; In re Debs, 1895, 158 U.S. 564, 594–595, 596, 15 S.Ct. 900, 39 L.Ed. 1092. Nor in the present case was there a statutory right to a jury trial. Rule 42(b) allows "a trial by jury in any case in which an act of Congress so provides," and 18 U.S.C. § 3691 (1952) entitles a defendant to a jury trial if "the act or thing done or omitted also constitutes a criminal offense under any Act of Congress, or under the laws of any state in which it was done or omitted." [2] See also 18 U.S.C. § 402 (1952). But the fact remains that the failure to respond to a Federal Grand Jury subpoena does not independently constitute an offense under any act of Congress; nor is it a violation of any statute of New York or California to which our attention has been called. The failure to respond to a Grand Jury subpoena is therefore to be tried without a jury, as a criminal contempt under 18 U.S.C. § 401(3) (1952).[3] See Green v. United States, 356 U.S. at page 182, 78 S.Ct. at page 642.[4]

## III.

■ The appellant further urges that the subpoena itself was invalid for a variety of reasons. Several of these are frivolous on their face. The only colora-

2. "§ 3691. Jury trial of criminal contempts.
 "Whenever a contempt charged shall consist in willful disobedience of any lawful writ, process, order, rule, decree, or command of any district court of the United States by doing or omitting any act or thing in violation thereof, and the act or thing done or omitted also constitutes a criminal offense under any Act of Congress, or under the laws of any state in which it was done or omitted, the accused, upon demand therefor, shall be entitled to trial by a jury, which shall conform as near as may be to the practice in other criminal cases.
 "This section shall not apply to contempts committed in the presence of the court, or so near thereto as to obstruct the administration of justice, nor to con-tempts committed in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States."

3. "§ 401. Power of court.
 "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
 * * * * *
 "(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

4. As stated in 18 U.S.C. § 402 (1952): "[A]ll other cases of contempt not specifically embraced in this section shall be punished in conformity to the prevailing usages at law."

ble claim of error is the alleged failure of the agent who served the subpoena to tender witness and travel fees pursuant to Fed.R.Crim.P. 17(d).[5] It is true that the agent did not actually offer De Simone the fees on the spot, but he did inform him that funds were available at the Los Angeles Marshal's office—some ten minutes away from the actual place of service. The agent further informed De Simone that he was prepared to escort him to the Marshal's office to obtain the fees. De Simone rejected the offer, saying that he knew where the office was and would go there himself. But he never went. Under such circumstances, the offer to make the funds available at the Marshal's office must be considered a sufficient tender of the fees, in substantial compliance with Rule 17(d).[6] Cf. United States v. United Mine Workers, 330 U.S. at page 298, 67 S.Ct. at page 698; Carlson v. United States, 1 Cir., 209 F.2d at page 218.[7]

## IV.

■ Other allegations of error relate to the evidence. The appellant objects to the admission of hearsay and supposedly prejudicial evidence. The judge, however, allowed such evidence into the record subject to its connection with the actual contempt. Whatever prejudice might have existed had the case been tried to a jury did not exist here, as the trial was before a judge sitting without a jury. Personal bias or prejudice on the part of the trial judge is not alleged.

■ The appellant also objects to the admission of evidence relating to his activities prior to the date of service of the Grand Jury subpoena. But such evidence was directly relevant to the question of intent, wilfulness, and contumaciousness. Cf. Silverman v. United States, 8 Cir., 1955, 220 F.2d 36, 39.

■ The appellant also urges that the evidence was insufficient to sustain a finding of guilt beyond a reasonable doubt. But surely the appellant's failure to appear on the return date was sufficient in itself to establish a prima facie case as to the requisite intent and wilfulness. "The burden was then upon the appellant to show that he had in good faith tried to comply." United States v. Johnson, 2 Cir., 247 F.2d 5, 8, certiorari denied, 1957, 355 U.S. 867, 78 S.Ct. 116, 2 L.Ed.2d 74; see United States v. Fleischman, 1950, 339 U.S. 349, 360–363, 70 S.Ct. 739, 94 L.Ed. 906. As we have noted, De Simone made no attempt to explain his failure to appear on the return date or his whereabouts from April 28th to May 19th. Under such circumstances, the court had little choice but to find him guilty of criminal contempt. See United States v. Goldfarb, supra.

## V.

■ Finally, there arise several questions as to the sentence imposed on appellant. Upon De Simone's conviction for contempt, the trial court sentenced him to serve six months' imprisonment and to pay a fine of $1,500.00. Section 401 of Title 18 of the United States Code grants power to a court "to punish by fine *or* imprisonment, at its discretion. * * *" (Emphasis added.) The im-

---

5. "Rule 17. Subpoena.

 \* \* \* \* \*

 "(d) Service. A subpoena may be served by the marshal, by his deputy or by any other person who is not a party and who is not less than 18 years of age. Service of a subpoena shall be made by delivering a copy thereof to the person named and by tendering to him the fee for 1 day's attendance and the mileage allowed by law."

6. In Taylor v. United States, 6 Cir., 221 F.2d 809, certiorari denied, 1955, 350 U.S. 834, 76 S.Ct. 69, 100 L.Ed. 744, although the facts were much the same as in the present case, no question was even raised as to the adequacy of the tender.

7. Under this view of the case, we need not reach the question of the effect of 28 U.S.C. § 1825 (1952), which states that "Fees and mileage need not be tendered to the witness upon service of a subpoena issued in behalf of the United States or an officer or agency thereof." According to the Revisors' Notes this section of Title 28 "supersedes * * * [Rule 17(d)] as to Federal criminal cases."

position of both imprisonment and fine was therefore illegal. See, e. g., In re Bradley, 1943, 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 500; Ex parte Robinson, 1873, 19 Wall. 505, 512, 86 U.S. 505, 512, 22 L.Ed. 205. During the preparation of this appeal, the Government discovered the error in the sentence and made a motion in this court to remand the case to the District Court, pursuant to Fed.R.Crim.P. 35, which allows a court to "correct an illegal sentence at any time." The motion for remand was granted. The District Court resentenced appellant to a term of six months imprisonment, *nunc pro tunc*, and eliminated the $1,500.-00 fine, which appellant had not in fact paid. The case thereafter came on for argument before this court, on a new notice of appeal.[8]

 Appellant contends that this procedure created prejudicial error, urging that the original sentence was perfectly legal and hence was not subject to the provisions of Rule 35. Appellant's theory is that the contempt was prosecuted, not under Section 401 of the Criminal Code, but under Section 402, which allows a court to punish the contempt "by fine or imprisonment, or both." The argument hardly merits consideration.

In our discussion of the right to indictment or information and jury trial, we have already indicated that the failure of appellant to respond to a grand jury summons was a contempt punishable only under Section 401. The original sentence was clearly illegal, and was therefore subject to correction under Rule 35.[9] The lifting of the fine was in no way prejudicial to appellant.

De Simone also complains of the failure of the United States Attorney to take him before the Grand Jury, once he had surrendered himself, and of the failure of the trial court to provide him with an opportunity to purge himself of contempt. It appears that De Simone on several occasions after he had surrendered offered to go before the Grand Jury. The Government declined these offers. On two separate occasions shortly after the surrender the District Court asked the Government why it appeared no longer to have any interest in bringing De Simone before the Grand Jury to testify. In both instances, the Government replied that it wished to delay bringing De Simone before the Grand Jury because it wished first to prosecute him for contempt. Although the court expressed surprise at this attitude, it allowed the trial for contempt to proceed.[10] After the

---

8. Our order of remand recited that in the event a new notice of appeal was filed, that appeal should be conducted on the papers presently on file and such supplemental papers as the parties might be advised to file, "without prejudice to the raising of any new points based on any order entered by the United States District Court on the said remand."

9. Even if the contempt had been punishable under Section 402, the imposition of the $1,500.00 fine was a direct violation of that Section's mandate that "in no case shall the fine to be paid to the United States exceed * * * the sum of $1,000. * * *" Thus even under Section 402, the sentence was correctable under Rule 35.

10. Transcript of Proceedings before Judge Weinfeld in the New York District Court for the Southern District of New York, May 19, 1958, p. 16:
 "The Court: Is the grand jury in session now?

"Mr. Shaw: Yes, it is, your Honor.
 "The Court: Why don't you take him before the grand jury now?

"Mr. Shaw: Well, since there is the issue of this contempt outstanding, I do not believe we could take him before the grand jury until that issue is resolved. * * * *"

Transcript of Proceedings before Judge Kaufman, May 22, 1958, pp. 23, 25–26:
 "The Court: Why are you pressing a contempt? I mean, if he is willing to go before the grand jury, why don't you simply put over the application to punish for contempt?
 * * * * *
 "The Court: * * * [C]ertainly the prime objective is to get his appearance.
 "Mr. Shaw: But there is also the possibility since the contempt in this case was strongly contumacious and deliberate and wilful, where a prison sentence or a fine would be imposed. This is not the ordinary case.

court had found De Simone guilty of contempt, and had invited "comments with respect to penalties," defense counsel urged that De Simone be allowed to go before the Grand Jury and be given an opportunity to purge himself, sentence being suspended in the interim. The court made no direct response to this request, but proceeded, after allocution, to sentence the defendant.

 We find it difficult to understand the attitude taken by the Government in this case. Technically, no doubt, the prosecutor can in his discretion choose to pursue the contempt, and refrain from bringing the contemnor before the Grand Jury. But such a choice may sometimes amount to mere harassment of the contemnor, rather than a real effort to aid the Grand Jury in its search for the truth. Certainly if after De Simone's surrender he had been brought before the Grand Jury to testify, as he was then willing to do, and had testified, the Government could still have prosecuted him for contempt if it so desired.[11] No automatic bar to the prosecution for contempt would flow from the fact of having testified at a date later than the one specified in the subpoena. As to the sentence imposed, and the court's failure to allow an opportunity to purge, we recognize that the trial court possesses wide discretion in these matters. See Brown v. United States, 1959, 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609, affirming 2 Cir., 1957, 247 F.2d 332, rehearing denied April 20, 1959, 359 U.S. 976, 79 S.Ct. 873, 3 L.Ed.2d 843. But it is to be noted that in Brown the trial judge accorded the witness "a *locus penitentiae* before finally adjudicating him in contempt. * * *" 359 U.S. at page 52, 79 S.Ct. at page 547. And in that case the Government represented that the testimony desired to be

elicited from the witness was "of the very greatest importance. * * *" Ibid. No such representation was made in the instant case: at no time has the Government suggested—on this record at least—what testimony De Simone could give, much less that it was of any importance. Here, moreover, the sentence imposed was comparable in its severity to those customarily given where there has been a positive refusal to take the stand. See Brown, supra, 359 U.S. at page 58, 79 S.Ct. at page 550 note 11 (dissenting opinion). The judgment contained no purge clause. Taking all these factors together, we think the sentence (even as revised) approached the outer limits of the court's discretion. Under the decision in Brown, however, we cannot say that those limits were exceeded.

 The circumstances just recited lead us to view with particular concern appellant's complaint that the corrected judgment entered does not recite the true facts relating to appellant's actions. The judgment states that the contempt was "in failing and refusing to appear before the Grand Jury to answer proper questions. * * *" In reality, appellant's contempt was in failing and refusing to appear before the Grand Jury on the return date entered on the subpoena. Twelve days after the return date, De Simone voluntarily surrendered himself to the authorities and offered to appear before the Grand Jury. We think that justice and fair play require that the judgment be revised to describe with accuracy the offense committed. While we do not question that De Simone could properly be held guilty of contempt, the judgment must be vacated and the case remanded with instructions to enter a judgment which fairly recites the con-

"The Court: That may well be, but * * * I should think you would want to get him before that grand jury as fast as possible.

"Mr. Shaw: It is still the Government's position, your Honor, after consulting with my superiors, we feel at least that we should delay putting him before the grand jury.

"The Court: All right. I will put it over until May 26th."

11. See United States v. Sacher, 2 Cir., 1950, 182 F.2d 416 at page 430, affirmed, 1952, 343 U.S. 1 at page 11, 72 S.Ct. 451, at page 456, 96 L.Ed. 717; Wilson v. United States, 3 Cir., 1933, 65 F.2d 621, at pages 623, 624.

tempt of which the contemnor is guilty. Upon remand, the District Court is free to reconsider the sentence imposed in light of the circumstances as they may then appear. Should the circumstances warrant, the trial court in its discretion may again consider whether the sentence should be reduced or a purge clause appended.[12]

So ordered.

---- -

MOORE, Circuit Judge (concurring in the result).

I concur in Judge WASHINGTON's opinion including Parts I, II, III, IV and so much of Part V as deals with the corrected sentence. I also agree that for the sake of clarity the judgment should be modified to recite mere failure and refusal to appear, although I would construe the words "to answer proper questions" as a statement of purpose rather than as a charge of failure and refusal to answer proper questions.

However, I do not agree with the portion of the opinion which deals with the positions taken by the United States Attorney and by the sentencing court for the reasons: (1) there are no facts before us from which any conclusions can be drawn as to the motivating factors which prompted their actions; and (2) absent such facts I do not believe it should be the function of an appellate court to indicate the procedure or the strategy which an attorney (whether for the prosecution or the defense) should have adopted or the type of sentence which the trial judge should have imposed, unless their actions were beyond the limits of reasonable discretion.

Concededly, De Simone was served on April 28, 1958, he failed to appear on May 7, 1958, the grand jury then issued a presentment for criminal contempt, he appeared on May 19, 1958, and he made no attempt to explain his failure to appear or to account for his whereabouts during the interval. Such conduct would seem to be somewhat inconsistent with subsequent protestations of a desire to purge the contempt. De Simone chose to disregard the law and to appear when it suited his convenience. The investigation of crime and law enforcement would scarcely be benefitted by permitting persons subpoenaed to adopt such an attitude. If the only consequence of a flagrant disregard of the subpoena is to be an opportunity to purge the contempt at the contemnor's convenience there will be very little respect for the laws or the courts.

As to the failure of the United States Attorney to allow De Simone to present himself before a grand jury, quite apart from its being a matter of his judgment in the light of the facts as he knew them, he might well have felt that such action would be criticized as prejudicial to De Simone since a writ had been issued for his arrest.

Since the sentence was not beyond proper discretion no comment need be made. The trial judge saw De Simone, heard the testimony, and in all probability had the advantage of a probation report.

12. In Brown, the Supreme Court said [359 U.S. 41, 79 S.Ct. 548]:
"If within 60 days of the termination of these proceedings the petitioner indicates his willingness to testify, the District Court will no doubt consider that fact in passing upon a motion for reduction of his sentence under Rule 35 of the Federal Rules of Criminal Procedure." 79 S.Ct. at page 547, n. 15.
The same should hold true in the instant case. Of course, the District Court in considering any offer by the accused to purge himself should not be influenced by the possibility that he might refuse to answer particular questions on the basis of the privilege against self incrimination, or some other privilege. And if the Grand Jury before which De Simone was subpoenaed is no longer in session, it may be too late to offer to testify before that body, cf. Yates v. United States, 9 Cir., 1955, 227 F.2d 844, 847; Loubriel v. United States, 2 Cir., 1926, 9 F.2d 807, 809; United States v. Collins, D.C.Or.1906, 146 F. 553, but any offer by the contemnor to appear before a Grand Jury actually in session should of course be considered.